### New Haven Water Company v. The City of New Haven

### New Haven Water Company v. The Town of Hamden

King, C. J., Murphy, Alcorn, Shannon and Loiselle, Js.

Argued April 6—decided May 5, 1965

*Thomas F. Keyes, Jr.,* with whom, on the brief, was *A. Frederick Mignone,* for the appellant (defendant) in the first case.

*William L. Hadden, Jr.,* for the appellant (defendant) in the second case.

*Richard H. Bowerman,* with whom were *Lawrence W. Iannotti* and, on the brief, *Morris Tyler,* for the appellee (plaintiff) in both cases.

KING, C. J.   These two cases were argued together and may be considered in one opinion. Each involves the power of a municipality to impose upon the plaintiff, by ordinance, the obligation of fluoridating the water supply furnished by the plaintiff to the inhabitants of that municipality.

Judgment in favor of the plaintiff was rendered in each case, and each defendant has appealed.

The plaintiff is, by statutory definition, a public service company. General Statutes § 16-1; *Dwyer* v. *Public Utilities Commission,* 147 Conn. 229, 230, 158 A.2d 742. It is privately owned[1] and is engaged in the business of furnishing water for public and domestic use to eleven municipalities in the New Haven area, including each defendant. The plaintiff obtains water from sources in thirteen communities. It distributes this water through an integrated system so constructed as to supply, through the system as a whole, the total requirements of all of the municipalities served. Of those served, only the two defendant municipalities have enacted ordinances purporting to require fluoridation of the water supplied to their inhabitants. The material portions of each ordinance are substantially identical. The other municipalities served by the plaintiff have not adopted ordinances regarding fluoridation. The cost to the plaintiff of converting its distribution system to provide for the fluoridation of water supplied New Haven alone, without fluoridating the water furnished to the other municipalities served, would be approximately $4,500,000, while the cost of a similar conversion to supply Hamden alone would be approximately $1,589,000. On the other hand, the cost of converting the system to fluoridate the water furnished to all the municipalities served would be only $79,600.

The court also found that "[t]he introduction of fluoride into the public water supply . . . will substantially and materially reduce caries in the

---

[1] We are not here concerned with a water supply system owned and operated by a municipal corporation under special legislative authority.

teeth of children under the age of sixteen . . . and will benefit adults by increasing the density of the bones of the body, thus reducing the prevalence of osteoporosis in adults." The ordinances, which require the introduction of fluoride into the public water supply, thus were found to tend to promote the public health. Cases involving the validity of enactments providing for the fluoridation of a public water supply are collected in an annotation in 43 A.L.R.2d 453, 459.

As a creature of the state, a municipality can exercise only such powers as are expressly granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428; *Bredice* v. *Norwalk,* 152 Conn. 287, 292, 206 A.2d 433; *Ingham* v. *Brooks,* 95 Conn. 317, 328, 111 A. 209; *Crofut* v. *Danbury,* 65 Conn. 294, 300, 32 A. 365. Each defendant bases its claim of authority to enact the ordinance in controversy on the Home Rule Act (General Statutes, c. 99), which authorizes a municipality to "provide for the health of . . . [its] inhabitants . . . and to do all things necessary or desirable to secure and promote the public health."[2] General Statutes § 7-194, subdivision (44). The defendants claim that the ordinances are valid because, as found by the court, they require, in fluoridation, action promoting the public health.

In the determination of the adequacy of the municipal legislative authority conferred by the general

---

[2] New Haven also makes a claim of authority to enact its ordinance under § 50 (1) of the New Haven Charter (Rev. to Sept. 1952), which authorizes the enactment of ordinances "[t]o provide for the health of the city." Clearly, this provision adds nothing to the grant of power in the Home Rule Act, and consequently it need be given no separate consideration.

grant of power relied upon by the defendants, it must not be overlooked that the particular ordinances in question are directed to the regulation of a public service company which is not only engaged in supplying water to at least eleven separate municipalities but which is subject to extensive regulation by the state through the public utilities commission, the state department of health, and otherwise.[3]

The plaintiff claims that each ordinance is invalid because it is inconsistent with this overall state regulatory scheme. As early as 1895, this court observed that "[t]he proper regulation of railroads, in their course through different towns, is a matter which is necessarily of more than local concern." *Cullen* v. *New York, N.H. & H.R. Co.,* 66 Conn. 211, 223, 33 A. 910. "Neither the public nor the service corporation could tolerate as many standards and policies as there were towns, cities or boroughs through which they operated." *Connecticut Co.* v. *New Haven,* 103 Conn. 197, 211, 130 A. 169. "[T]he same reasoning applies today with even greater emphasis to a public utility supplying a service which almost everyone in the state requires daily." *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 662, 103 A.2d 535. In the absence, as here, of specific legislative authority to the contrary, it is the policy of this state to reserve to itself the control of public service cor-

---

[3] See, for instance, General Statutes §§ 16-1, 16-11, 16-23 (public utilities commission); General Statutes §§ 19-1, 19-13 and Conn. Public Health Code (Oct., 1961), Regs. 103 (A) (e) and (g), 103 (B) (b), 112, 118, 120, General Statutes §§ 25-32—25-37 (state department of health); General Statutes §§ 25-38, 25-39, 25-41, 25-43, 25-44 (state statutory control); General Statutes § 25-45 (specific delegation to municipalities of power to enact ordinance to protect reservoirs).

porations serving more than one community. *Connecticut Co.* v. *New Haven,* supra; *Jennings* v. *Connecticut Light & Power Co.,* supra, 663; *Dwyer* v. *Public Utilities Commission,* 147 Conn. 229, 232, 158 A.2d 742; cf. Conn. Dept. Regs. § 19-13-B81, effective February 9, 1965 (appearing in 26 Conn. L.J., No. 32, p. 24). The ordinances in question are in conflict with this policy, and the court was not in error in holding them invalid and in granting injunctive relief against their enforcement.[4]

There is no error in either case.

In this opinion the other judges concurred.

---

[4] The defendants seem to place great reliance on the case of *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 548, 163 A.2d 548, which upheld the power of the city of New Britain to enact an ordinance requiring the attendance of a police officer during each performance at any moving picture theater within that city. The New Britain charter specifically empowered the enactment of ordinances "concerning the regulation of moving picture exhibitions." That case does not support or strengthen the defendants' position.