## City Council of the City of West Haven *v.* Jon Hall

Cotter, C. J., Bogdanski, Speziale, Peters and Rubinow, Js.

Argued December 11, 1979—decision released April 15, 1980

*Jon P. Leckerling,* with whom, on the brief, was *Carter LaPrade,* for the appellant (defendant).

*Robert E. Reilly,* corporation counsel, for the appellee (plaintiff).

Speziale, J. The dispositive issue in this case is whether § 7-194 (26) of the Home Rule Act authorizes a municipality to grant to its governing or legislative body the power to issue subpoenas. We hold that it does not.

The defendant, Jon Hall, is an investigative reporter for the *Journal Courier,* a daily newspaper. Hall wrote a series of articles about public school lunch programs in the greater New Haven area, including the school lunch program of the city of West Haven. In these articles it was reported, inter alia, that despite its policy requiring competitive bidding for all contracts greater than $1000, the city of West Haven did not use competitive bidding procedures in contracting with major food suppliers of its lunch program, that the use of such bidding procedures might have resulted in a savings of as much as $100,000, and that, for a brief period, an official of the West Haven school system had been employed simultaneously by the city of West Haven and by the supplier of its school lunches.

Subsequently, the plaintiff, the city council of the city of West Haven (hereinafter the city council), commenced under chapter IV, § 9 of the city charter[1] an investigation of the public school lunch program. Unable to confirm the defendant's findings, the city council by letter requested Hall to appear voluntarily before it both to discuss bidding procedures and to set forth the manner in which he arrived at his calculations. The letter indicated that the investigation would encompass the following areas: "(1) Bidding Procedures.

---

[1] Chapter IV, § 9 of the city charter of the city of West Haven provides:

"INVESTIGATION: The City Council shall have power, by two-thirds vote of its entire membership, to investigate any officer, department or board and shall have power to compel the attendance of witnesses and the production of data at any meeting of the City Council or any committee thereof, and for that purpose may issue subpoenas, which shall be signed by the Chairman of the Council. The investigation may be conducted by a committee appointed by the Council for that purpose, provided that not more than half of the members of such committee shall be members of the same political party."

(2) Price differences between the West Haven School Food Service Program and the *Journal Courier*. (3) Charges that the Food Service Program Director was on the payroll of the West Haven School Food Service Program during the same week." Hall declined the informal request to appear and testify before the city council. He, however, advised the city council that he had obtained all his information regarding bidding procedures and price differentials from the public records of the city of West Haven and from those of other municipalities. Hall also offered to meet informally with city council members as well as with the city council's attorney to answer questions about the price differences. The information Hall had regarding the dual employment of a city official was available from public records and from the city's supplier of school lunches; Hall's knowledge about this topic was disclosed and published in its entirety in the newspaper articles.

Hall was served with two identical subpoenas commanding him to appear before the city council on March 27, 1979. One subpoena was signed by the chairman of the city council; the other was signed by the corporation counsel for the city of West Haven. Hall did not appear before the city council on the above date and subsequently refused to testify before the city council pursuant to the two subpoenas. The city council filed suit seeking, inter alia, an order compelling Hall to testify before it. The trial court (*Hadden, J.*) rendered judgment for the city council finding that the city had the statutory authority under § 7-194 (26) of the Home Rule Act to adopt chapter IV, § 9 of the city charter,[2] which expressly grants the city council the power to

---

[2] For the text of this section see footnote 1, supra.

issue subpoenas if certain conditions, which are not challenged here, are met. The court ordered the defendant to appear before the city council when requested to do so by the corporation counsel of the city of West Haven and to comply with § 51-85 of the General Statutes.[3] The trial court also stated that if Hall "feels that he has a constitutional right not to answer any particular question, then he should assert that right on a question by question basis." From the judgment for the city council, Hall has appealed.

The basic issues raised in this case are: (1) whether § 7-194 (26) of the Home Rule Act[4]

---

[3] "[General Statutes] Sec. 51-85. AUTHORITY AND POWERS OF COMMISSIONERS OF THE SUPERIOR COURT. Each attorney-at-law admitted to practice within the state, while in good standing, shall be a commissioner of the superior court and, in such capacity, may, within the state, sign writs and subpoenas, take recognizances, administer oaths and take depositions and acknowledgments of deeds. Each such attorney may also issue subpoenas to compel the attendance of witnesses and subpoenas duces tecum in administrative proceedings. If, in any administrative proceeding, any person disobeys such subpoena or, having appeared in obedience thereto, refuses to answer any proper and pertinent question or refuses to produce any books, papers or documents pursuant thereto, application may be made to the superior court or any judge thereof for an order compelling obedience."

[4] Chapter 99 of the General Statutes, which is comprised of §§ 7-187 to 7-201, is referred to as the Home Rule Act. *Pizzuto* v. *Newington*, 174 Conn. 282, 284, 386 A.2d 238 (1978); *Pepin* v. *Danbury*, 171 Conn. 74, 76, 368 A.2d 88 (1976). Public Acts 1957, No. 465, An Act Concerning Home Rule, contained, inter alia, the provision currently before us. Although that act has been amended on numerous occasions; Public Acts 1961, No. 517, § 89; Public Acts 1961, No. 490; Public Acts 1967, No. 19; Public Acts 1971, No. 802, § 12; Public Acts 1972, No. 279; Public Acts 1975, No. 516; Public Acts 1979, Nos. 79-531, § 2, and 79-618, § 2; subsection (26) has remained unaltered since its enactment in 1957.

The city council has not claimed that a special act granted the subpoena power to West Haven. See General Statutes § 7-188; *Board of Selectmen of the Town of Fairfield* v. *Kellis*, 35 Conn. Sup. 668, 406 A.2d 9 (1979).

empowers a municipality to adopt a charter provision authorizing its governing or legislative body to issue subpoenas in investigative hearings;[5] (2) whether the trial court erred in not concluding that the city council's inquiry into a journalist's thoughts, opinions, and conclusions was violative of the first amendment to the United States constitution; and (3) whether the trial court erred in concluding that the city council need not meet a constitutionally mandated burden of proof when subpoenaing a newspaper reporter. Because our resolution of the first issue is decisive of the case, there is no need to reach the latter issues. We conclude that § 7-194 (26) of the Home Rule Act does not authorize a municipality to grant to its governing or legislative body the power to issue subpoenas.

Section 7-194 of the General Statutes provides, in relevant part, that "all towns, cities or boroughs which have a charter or which adopt or amend a charter under the provisions of this chapter shall have the following *specific powers* in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes: . . . (26) to make and enforce police, sanitary and other similar regulations and to protect or promote the peace,

---

[5] The trial court also specifically agreed with the defendant's contention that § 51-85 of the General Statutes must be construed as allowing a commissioner of the superior court to subpoena a witness in an administrative proceeding only when the administrative body has independent subpoena power. The plaintiff did not file a cross appeal from that ruling and, in fact, unlike the defendant, does not directly address this issue in its brief. Inasmuch as the ruling below on this issue was for the defendant, and the plaintiff neither filed a cross appeal nor raised the issue in a preliminary statement of issues, we do not consider the merits of this contention. Practice Book, 1978, as amended, §§ 3003 & 3012 (a); cf. *Board of Police Commissioners* v. *White*, 171 Conn. 553, 557, 370 A.2d 1070 (1976).

safety, good government and welfare of the town, city or borough and its inhabitants." (Emphasis added.)

We have long recognized that as a creation of the state, a municipality has no inherent powers of its own. *Pepin* v. *Danbury*, 171 Conn. 74, 83, 368 A.2d 88 (1976); *New Haven Water Co.* v. *New Haven*, 152 Conn. 563, 566, 210 A.2d 449 (1965); *State ex rel. Coe* v. *Fyler*, 48 Conn. 145, 158 (1880); see also *Baker* v. *Norwalk*, 152 Conn. 312, 314, 206 A.2d 428 (1965); *Bredice* v. *Norwalk*, 152 Conn. 287, 292, 206 A.2d 433 (1964); *Crofut* v. *Danbury*, 65 Conn. 294, 32 A. 365 (1894). Unlike the inherent powers that appertain to state legislatures; 4 McQuillin, Municipal Corporations (3d Ed. Rev. 1979) § 13.03, p. 510; the only powers a municipal corporation has are those which are expressly granted to it by the state. *Pepin* v. *Danbury*, supra, 83. We also have recognized that a municipality has such powers as are "necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *Board of Police Commissioners* v. *White*, 171 Conn. 553, 559, 370 A.2d 1070 (1976); *Avonside, Inc.* v. *Zoning & Planning Commission*, 153 Conn. 232, 236, 215 A.2d 409 (1969).

The above-quoted language regarding powers that are "necessary" is relied upon heavily by the city council to support its claim that the legislature delegated to municipalities under § 7-194 (26) the power to issue subpoenas even though such power is not expressly mentioned in this section of the Home Rule Act. We disagree. The legislature certainly has the authority to grant subpoena power to

municipalities,[6] and, in fact, specifically has authorized certain persons to issue subpoenas compelling the attendance of witnesses before municipal boards of police commissioners. General Statutes § 7-279. We do not believe, however, that § 7-194 (26) can be read so expansively as to permit the conclusion that it contains a legislative grant of the subpoena power.

The power to issue a subpoena is a great power. " 'It is the duty of every witness, lay or expert, to respond to a subpoena and, unless privileged, to testify to factual matters relevant to a controversy.' " *DiPalma* v. *Wiesen,* 163 Conn. 293, 303, 303 A.2d 709 (1972); *Thomaston* v. *Ives,* 156 Conn. 166, 172, 239 A.2d 515 (1968); cf. *Nixon* v. *United States,* 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). Therefore, it is noteworthy that the legislature in § 7-194 granted in express terms powers which may be considered of lesser magnitude than the subpoena power. For example, there is authorization under § 7-194 (13) for a municipality

---

[6] The constitution of Connecticut, article tenth, § 1 provides:

"The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions. The general assembly shall from time to time by general law determine the maximum terms of office of the various town, city and borough elective offices. After July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough, except as to (a) borrowing power, (b) validating acts, and (c) formation, consolidation or dissolution of any town, city or borough, unless in the delegation of legislative authority by general law the general assembly shall have failed to prescribe the powers necessary to effect the purpose of such special legislation."

"This Court has often recognized that political subdivisions such as cities and counties are created by the State 'as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them.' *Hunter* v. *Pittsburgh* [207 U.S. 161, 178, 28

"to provide for the planting, rearing and preserving of shade and ornamental trees on the streets and public grounds" and under § 7-194 (23) "to permit, regulate and prohibit games, coasting, sliding and, subject to the provisions of the General Statutes, the use of velocipedes, bicycles and tricycles, on the streets or sidewalks of the town, city or borough." A fortiori, if the legislature had intended to include this very important authority to issue subpoenas, it would have specifically so stated. The power to subpoena, however, does not appear in § 7-194 of the General Statutes as revised to 1979. In *State ex rel. Barnard* v. *Ambrogio,* 162 Conn. 491, 497–98, 294 A.2d 529 (1972), we noted: "That the legislature went to the extent of precisely enumerating [numerous] specific powers without mentioning [a subpoena power] indicates that it did not intend to grant the municipalities such a power by way of a charter adoption." It is generally held that the express enumeration of powers granted to municipalities constitutes an exclusion of all other powers not expressly delegated to them. 2 McQuillin,

S. Ct. 40, 52 L. Ed. 151 (1907)]. See also, e.g., *Sailors* v. *Board of Education* [387 U.S. 105, 108, 87 S. Ct. 1549, 18 L. Ed. 2d 650 (1967)]; *Reynolds* v. *Sims* [377 U.S. 533, 575, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964)]. In *Hunter* v. *Pittsburgh,* the Court discussed at length the relationship between a State and its political subdivisions, remarking: 'The number, nature and duration of the powers conferred upon [municipal] corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.' Ibid. While the broad statements as to state control over municipal corporations contained in *Hunter* have undoubtedly been qualified by the holdings of later cases such as *Kramer* v. *Union Free School Dist.* [395 U.S. 621, 89 S. Ct. 1886, 23 L. Ed. 2d 583 (1969)], we think that the case continues to have substantial constitutional significance in emphasizing the extraordinarily wide latitude that States have in creating various types of political subdivisions and conferring authority upon them." *Holt Civic Club* v. *Tuscaloosa,* 439 U.S. 60, 71, 99 S. Ct. 383, 58 L. Ed. 2d 292 (1978).

Municipal Corporations (3d Ed. Rev. 1979) § 10.23, p. 802. See also *State ex rel. Barlow* v. *Kaminsky*, 144 Conn. 612, 620, 136 A.2d 792 (1957) ("enumeration of powers in a statute is uniformly held to forbid the things not enumerated").

Finally, of importance is that during the January, 1979 session the legislature amended the Home Rule Act by enacting Public Act 79-618, § 3, effective October 1, 1979.[7] This section specifically grants the power to subpoena to a board, commission, council, committee, or other agency which has been established by charter provision or ordinance to investigate allegations of unethical conduct, corrupting influence, or illegal activities levied against any municipal official, officer, or employee. If the power to subpoena already had been delegated to municipalities under § 7-194 (26), there would have been no need for the legislature to have expressly authorized the use of subpoena power in Public Act 79-618, § 3. It should be presumed that a law was adopted in view of existing relevant statutes and that the legislature intended it to be read with them so as to constitute one consistent body of law. *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 130, 394 A.2d 731 (1978). Further, we may not presume that the legislature has enacted futile or meaningless legislation or that a change in a law was made without a reason. *Hartford Electric Light Co.* v.

---

[7] Public Acts 1979, No. 79-618, § 3 provides:

"Any town, city or borough may, by charter provision or ordinance, establish a board, commission, council, committee or other agency to investigate allegations of unethical conduct, corrupting influence or illegal activities levied against any municipal official, officer or employee. Any such board, commission, council, committee or other agency established pursuant to this section may issue subpoenas or subpoenas duces tecum, enforceable upon application to the superior court, to compel the attendance of persons at hearings and the production of books, documents, records and papers."

*Sullivan,* 161 Conn. 145, 151–52, 285 A.2d 352 (1971); *In re Application of Plantamura,* 149 Conn. 111, 114, 176 A.2d 61, cert. denied, 369 U.S. 872, 82 S. Ct. 1141, 8 L. Ed. 2d 275 (1961); *Brown* v. *Cato,* 147 Conn. 418, 421, 162 A.2d 175 (1960).

In conclusion, we hold that § 7-194 (26) of the Home Rule Act does not authorize a municipality to include in its charter a provision conferring subpoena power on its governing or legislative body.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendant.

In this opinion the other judges concurred.