C. WHITE AND SON, INC. *v*. TOWN OF ROCKY HILL ET AL.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued March 12—decision released June 3, 1980

*Richard P. Heffernan,* with whom, on the brief, were *Joseph A. Hourihan* and *Stephen J. Duffy,* for the appellant (plaintiff).

*Robert F. Stengel,* for the appellees (defendants).

Cotter, C. J. The plaintiff, C. White & Son, Inc., appeals from a judgment of the Superior Court, denying a permanent injunction against the defendant town of Rocky Hill. The plaintiff, which is engaged primarily in the petroleum hauling business, sought to enjoin the defendants from enforcing a town ordinance restricting a designated class of commercial truck traffic from using Forest Street in Rocky Hill except while on a trip with a point of origin or destination on Forest Street. The sole issue raised by the plaintiff on this appeal is whether the town of Rocky Hill had the statutory authority to enact the town ordinance.

The trial court's memorandum of decision, together with its finding of facts; see *Karls* v. *Alex-*

*andra Realty Corporation,* 179 Conn. 390, 394, 426 A.2d 784; *New Haven Water Co.* v. *North Branford,* 174 Conn. 556, 562, 392 A.2d 456; disclose the following facts which are not disputed: On April 3, 1978, the town of Rocky Hill adopted Ordinance #68-78,[1] effective May 10, 1978, which prohibited trucks weighing over 6000 pounds from using Forest Street. The plaintiff is located two blocks from Forest Street, a local public residential street four-tenths of a mile in length, on which there are twenty homes. The street, 31.7 feet wide from shoulder to shoulder, has no sidewalks and there is one lane for traffic in each direction.

The plaintiff's equipment includes numerous tractor-trailer trucks which have a gross weight well in excess of 6000 pounds. These trucks, which used Forest Street more than ninety times a week as a route to Rocky Hill's Main Street, caused the residents of Forest Street to complain to city officials because of the trucks' noise, the danger to children and the rattling of houses. A commission was created to study the problem and in 1970 reported that it could not arrive at a recommendation for an alternate route. The only act by the town at that time was the lowering of the speed limit on Forest Street to twenty-five miles per hour.

[1] "ORDINANCE #68-78. AN ORDINANCE PROHIBITING COMMERCIAL TRUCK TRAFFIC ON FOREST STREET. Definition: Truck means every commercial motor vehicle other than public safety, education, municipal and municipal purpose vehicles having a gross weight of 6000 pounds and/or over and designed, used and maintained primarily for the transportation of property and includes a motor vehicle designed and used for the purpose of drawing a semi-trailer as well as the vehicle drawing the semi-trailer and the semi-trailer.

No person shall operate any truck on Forest Street except while on a trip with a point of origin from or destination on Forest Street.

Penalty: Any person violating the terms of the ordinance shall be fined not more than $50.00 for each offense."

Subsequently, the defendant municipality developed an industrial park adjacent to the plaintiff's place of business and constructed a new road known as Old Forge Road with two lanes of traffic in each direction which are separated by a median divider. Old Forge Road, which has no residences on it, was specially designed to accommodate commercial traffic.

The plaintiff's trucks have easy access to Old Forge Road, but in using that road as an alternative to Forest Street, the trucks must travel nine-tenths of a mile further to reach the corner of Main and Forest Streets. At the time of the trial court's judgment, the cost to the plaintiff of operating its tractor-trailer trucks was $1.30 per mile.

It is well settled that, as a creation of the state, a municipality can only exercise those powers expressly granted to it by the state. *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481; *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88; *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449. The defendant town successfully contended in the trial court that it had authority to enact Ordinance #68-78 pursuant to General Statutes § 7-194 which provides in part that "all towns, cities or boroughs which have a charter . . . shall have the following specific powers in addition to all powers granted . . . under the constitution and general statutes: . . . (8) to . . . control and operate streets . . .; (17) to regulate and prohibit the . . . use or opening of streets . . .; (20) to keep the streets . . . free from undue noises and nuisances . . .; (21) to regulate and prohibit, in a manner not inconsistent with the general statutes, the operation of vehicles on streets and highways."

The plaintiff argues that the issue in this appeal is controlled by our decisions in *Adley Express Co.* v. *Darien,* 125 Conn. 501, 7 A.2d 446, and *Darien* v. *Stamford,* 135 Conn. 71, 60 A.2d 764. In *Adley,* we were confronted with the validity of an ordinance which closed Noroton Avenue in Darien to through truck traffic. *Adley Express Co.* v. *Darien,* supra, 502–503. In that opinion we determined that there was no other reasonable and practical route through town for certain of the express company's trucks, which would as a result be required to make a considerable detour. Id. The *Adley* court read General Statutes (Rev. 1930) § 1635, the predecessor of present General Statutes § 14-162,[2] in conjunction with General Statutes (Rev. 1930) § 390, the forerunner of present § 7-148,[3] and determined that "while the state delegated to its municipalities the power to make traffic rules applying to all vehicles alike [presumably in both General Statutes (Rev. 1930) §§ 390 and 1635], the special power to regulate motor vehicles was retained by the state with the

---

[2] "[General Statutes] Sec. 14-162. ORDINANCES. No town, city or borough, nor any board or officer thereof, shall make any ordinance respecting the regulation, use, lighting or other equipment of motor vehicles, or respecting the use of equipment or accessories upon the same; but any ordinance in force in any town, city or borough in respect to maintaining public service vehicles in a sanitary condition shall remain in force, and authority given to any town, city or borough, or to any board or officer thereof, to regulate shows, processions, assemblages, traffic or parades in streets and public places and to regulate the use of public parks, and ordinances enacted in pursuance of such authority, shall remain in force, and authorities of any town, city or borough shall have power to establish and enforce ordinances fixing traffic routes and public stands for public service vehicles and traffic rules for all vehicles."

[3] General Statutes § 7-148 reads in relevant part: "SCOPE OF ORDINANCE POWER. (a) Any town, city or borough, in addition to such powers as it has under the provisions of the statutes or by any special act, may, by ordinance: . . . (12) Make rules relating to the regulation of traffic . . . ."

specific exceptions noted in the statute, § 1635." Id., 505. The court concluded that the ordinance banning through truck traffic was invalid as contrary to statutory authority. Id., 506. See General Statutes (Rev. 1930) §§ 390, 1635 (Rev. 1949 §§ 619, 2485).

Similarly, in *Darien* v. *Stamford,* supra, this court held invalid certain regulations of the town of Stamford which sought to restrict through truck traffic within its town limits to two routes. *Darien* v. *Stamford,* supra, 72. Chief Justice Maltbie, writing for the court, determined that the *Adley Express Co.* case was controlling because no relevant provisions of the General Statutes had been altered so as to authorize municipalities to establish through truck routes and to exclude those trucks from other routes through such municipalities, and thus to make inapplicable the court's decision nine years earlier in *Adley.* Id., 74. The *Darien* v. *Stamford* opinion also emphasized that the effect of the Stamford regulations was to leave through truck traffic with no reasonably available alternative route and concluded that "[i]n the absence of a clear expression to the contrary, we would hesitate to attribute to the General Assembly an intent to authorize municipalities to establish through ways for motor trucks which might well interfere so seriously with the normal flow of traffic of that kind." Id., 76–77.

The plaintiff's argument is that the basis for this court's decision in *Adley Express Co.* v. *Darien,* supra, was that there exists a distinction between the authority to make traffic rules for all vehicles and the authority to regulate motor vehicles, which is reserved to the state under § 14-162, and that the latter encompasses the power to close a street to a

designated class of vehicles. In other words, the plaintiff contends that *Adley Express Co.* v. *Darien,* supra, holds that any town ordinance creating a rule of traffic that does not apply to all vehicles alike would be an unauthorized regulation of motor vehicles. The plaintiff further claims that the *Adley Express Co.* case and its successor, *Darien* v. *Stamford,* supra, have not been restricted by the enactment of General Statutes § 7-194, albeit promulgated in 1957; Public Acts 1957, No. 465; nine years after *Darien* v. *Stamford,* supra, because that statute grants municipalities no greater power to close streets to a designated class of vehicles than does General Statutes § 7-148, whose forerunner was considered in *Adley* and *Darien.* We cannot agree with the position taken by the plaintiff.

Although we concede that the *Adley Express Co.* decision is susceptible to the broad reading the plaintiff would give to it,[4] it is equally apparent that *Adley* involved a situation where an ordinance sought to prohibit only through truck traffic without giving that traffic a reasonable and practical route through the town. *Adley Express Co.* v. *Darien,* supra, 503. More significantly, it is also apparent that the ratio decidendi of this court's decision in *Darien* v. *Stamford,* supra, involved both the fact

[4] It would be disingenuous to construe the court's holding in *Adley Express Co.* v. *Darien,* 125 Conn. 501, 7 A.2d 446, any more narrowly in light of the following language in that opinion: "Reading these sections together [the forerunners of § 14-162 and § 7-148] in view of their history, we conclude that while the state delegated to its municipalities the power to make traffic rules applying to all vehicles alike, the special power to regulate motor vehicles was retained by the state with the specific exceptions noted in the statute, § 1635. No other reasonable interpretation can be placed on the phrase 'no town . . . shall make any ordinance . . . respecting the speed of motor vehicles or respecting the regulation, use, lighting or equipment of the same.'" *Adley Express Co.* v. *Darien,* supra, 505.

that no reasonable alternative route existed and the fact that the traffic and motor vehicles restricted were through trucks. The *Darien* v. *Stamford* court, after noting that the *Adley Express Co.* case was applicable to the situation before it; *Darien* v. *Stamford,* supra, 74; then went on in detail to describe that situation and concluded: "There is no reasonably available route by which through trucks which are proceeding westerly and which leave the Boston Post Road because they are not able to use the underpass can return to that road other than by the use of Noroton Avenue or some of the streets closed to them by the regulations of the town or the city of Stamford. In the absence of a clear expression to the contrary, we would hesitate to attribute to the General Assembly an intent to authorize municipalities to establish through ways for motor trucks which might well interfere so seriously with the normal flow of traffic of that kind." Id., 76–77. In light of the quoted language, Chief Justice Maltbie's opinion in *Darien* v. *Stamford* must be accepted as restricting the *Adley Express Co.* decision to its facts. Thus, since the case before us involves the existence of a reasonable alternative route and traffic other than "through trucks,"[5] whatever arena of hegemony § 14-162 reserves to the state with regard to the regulation of motor vehicles must be viewed

[5] As we noted earlier, the town of Rocky Hill did not enact Ordinance #68-78 until after it had built Old Forge Road. Similarly, the present case cannot be said to involve "through truck traffic." In *Darien* v. *Stamford*, 135 Conn. 71, 72, 60 A.2d 764, the town of Stamford regulation at issue defined "through truck" as one which passes through and whose destination is beyond the town in either direction. Nine years after *Darien* v. *Stamford*, supra, the General Assembly in 1957 promulgated an amendment to General Statutes § 14-298, "State traffic commission," which provided that: "Said commission shall also make regulations, in cooperation and agreement with local traffic authorities, respecting the use by through truck traffic of streets and highways within the limits of, and under the jurisdiction

in light of the facts of this case, other pertinent statutes and the relevant principles of statutory construction. See *Bahre* v. *Hogbloom,* 162 Conn. 549, 558, 295 A.2d 547.

By asserting that municipalities pursuant to § 7-194 (8), (17), (20) and (21) cannot differentiate between various kinds of vehicles on their streets and prohibit them because of § 14-162, the plaintiff would have us defy well-settled rules of statutory construction and the logic of our recent decision construing § 7-194 (8) and (17). A statute should be construed so that no word, phrase or clause will be rendered meaningless. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 7, 434 A.2d 293; *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39. If towns cannot differentiate between vehicular traffic on their streets but must treat all vehicles alike, the word "regulate" in § 7-194 (17), "to regulate and prohibit the . . . use or opening of streets" would become insignificant because only prohibition of use of streets would be permitted. " 'Regulate connotes . . . the power to permit and control as well as to prohibit'; *Yale University* v. *New Haven,* 104 Conn. 610, 625, 134 A. 268; and 'infers limitations.' *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 702, 155 A.2d 754." *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 342, 348 A.2d 596.

---

of, any city, town or borough of this state for the protection and safety of the public." As the legislative history makes clear; see 7 H. R. Proc., Pt. 4, 1957 Sess., pp. 2056–59; "through truck traffic" is to be construed in accordance with the definition rendered in the *Darien* v. *Stamford* case. The phrase has acquired a peculiar meaning in the law; General Statutes § 1-1 (a); *State* v. *Phillips,* 166 Conn. 642, 645, 353 A.2d 706; which acknowledges the legislature's desire to prevent the balkanization of through truck traffic routes that would result if each town could determine those routes. See 7 H. R. Proc., Pt. 4, 1957 Sess., pp. 2056–59.

Another basic rule of statutory construction is that there is a presumption that the legislature, when enacting a statute, does so with regard to existing relevant statutes so as to make one consistent body of law. *State* v. *Murtha,* 179 Conn. 463, 466, 427 A.2d 807; *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491. Similarly, it is well settled that the law-making body must be presumed to be familar with the interpretation that courts have placed on existing legislation. *Skorpios Properties, Ltd.* v. *Waage,* 172 Conn. 152, 155, 374 A.2d 165; *State* v. *Kyles,* 169 Conn. 438, 442, 363 A.2d 97; *State ex rel. Butera* v. *Lombardi,* 146 Conn. 299, 305, 150 A.2d 309. In light of these principles of statutory construction, we must presume that the General Assembly was familiar with General Statutes §§ 14-162 and 7-148, and the decisions in *Adley Express Co.* v. *Darien,* supra, and *Darien* v. *Stamford,* supra, when it enacted § 7-194 (8), (17), (20) and (21) and that it attempted to create a consistent body of law. *Smith* v. *Zoning Board of Appeals,* 174 Conn. 323, 327, 387 A.2d 542. Thus, since § 14-162 is clearly left with a field of operation in regard to the regulation of the use of motor vehicles after the passage of § 7-194 (8), (17), (20) and (21), it should not unnecessarily be seen as in conflict with the grant in § 7-194 (8), (17), (20) and (21) of authority to municipalities to regulate and control their streets. Furthermore, even if we were to view these statutes as in conflict, as the plaintiff would have us do, it is well settled that where they are in conflict the later statute repeals the earlier one to the extent of the repugnance. *Norwalk Vault Co.* v. *Mountain Grove Cemetery Assn.,* 180 Conn. 680, 691, 433 A.2d 979; *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 206, 355 A.2d 21.

Furthermore, in *Pizzuto* v. *Newington,* 174 Conn. 282, 284, 386 A.2d 238, this court construed § 7-194 (8) and (17) as authorizing the town of Newington to close Kimberley Road through the installation of a concrete barrier. We stated that "[t]hat statute, by its terms, specifically grants the town broad authority to control traffic on its public streets." Id., 284. It would be anomalous, indeed, if the broad authority to close streets to all traffic did not contain within it, in these circumstances, the lesser power to restrict certain vehicles from using the streets. Cf. *City Council* v. *Hall,* 180 Conn. 243, 251, 429 A.2d 481.

Finally, we note that when the General Assembly in 1957 codified the results of *Adley Express Co.* v. *Darien,* supra, and *Darien* v. *Stamford,* supra, see footnote 5, it reserved authority to regulate through truck traffic to the state in the following manner in General Statutes § 14-298: "STATE TRAFFIC COMMIS-SION. . . . Said commission shall also make regulations, in cooperation and agreement with local traffic authorities, respecting the use by through truck traffic of streets and highways within the limits of, and under the jurisdiction of, any city, town or borough of this state for the protection and safety of the public." Significantly, in light of the express ratio decidendi in *Adley Express Co.* v. *Darien,* supra, the General Assembly only reserved power in the state respecting the use of "through truck traffic," not "truck traffic" nor just "traffic."

Thus, we cannot agree that, in the circumstances of this case which include the existence of a reasonable alternative route for the restricted traffic and the fact that an interior street of the municipality

is being regulated,[6] the town of Rocky Hill cannot differentiate on Forest Street between non-through-traffic trucks weighing more than 6000 pounds and other vehicles under the authority of General Statutes § 7-194 (8) and (17).

There is no error.

In this opinion the other judges concurred.

---

[6] On appeal, the plaintiff abandoned its claim at trial that the classification drawn in the ordinance was illegal; the trial court readily found that the classification was rationally related to a legitimate interest of the municipality.