## DOMINIC BUONOCORE *v.* TOWN OF BRANFORD ET AL.
### (11004)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued November 2, 1983—decision released March 6, 1984

*Robert F. McWeeny,* for the appellant (plaintiff).

*Frank J. Dumark,* for the appellees (defendants).

*Shelley Geballe* and *Martha Stone* filed a brief as amicae curiae.

SPEZIALE, C. J. This is an appeal by the plaintiff from the refusal of the trial court to declare invalid § 4g of the charter of the town of Branford (hereinafter the charter), which restricts the political activities of unclas-

sified state employees. Because we conclude that the trial court erred in determining that the municipality had authority to adopt that section of the charter, we find error and direct judgment for the plaintiff.

The facts are not in dispute: The plaintiff, Dominic Buonocore, is a resident of the town of Branford, a citizen of the United States, and has been employed since 1965 as a faculty member at Waterbury State Technical College in Waterbury. In his capacity as a faculty member of the technical college, the plaintiff is an unclassified employee of the state of Connecticut.[1]

In November, 1979, the plaintiff was elected to the legislative body of the town of Branford known as the Representative Town Meeting. In October, 1980, however, the plaintiff was removed from his elective office because his employment by the state of Connecticut violated § 4g of the charter, which prohibits state employees from holding elective office in the town of Branford.[2]

The plaintiff sought, inter alia, a declaratory judgment as to the validity of § 4g of the charter, temporary and permanent injunctive relief as to the plaintiff's right to hold office, and a quo warranto determination

---

[1] The plaintiff is employed through the Board of Trustees of the State Technical Colleges, a part of the executive branch of the government of the state of Connecticut. General Statutes § 5-196 (e) defines "classified service" as "every office or position in the state service, whether full-time or part-time, for which compensation is paid, except those offices and positions specified in section 5-198 or otherwise expressly provided by statute." General Statutes § 5-198 exempts from classified service a number of positions, including "members of the professional and technical staffs of the constituent units of the state system of higher education." General Statutes § 5-198 (1).

[2] The town of Branford charter § 4g provides: "No person holding any salaried or elective office, nor any member of any appointive board in the government of the state or the town of Branford nor any employee of said state or town shall be eligible for election as a member of the R.T.M.; and no member of the R.T.M., except an ex-officio member thereof, shall hold any such salaried, appointed or elected office or position of employment."

as to the defendant Richard Cohen, who had been elected by a vote of the six remaining Fourth District Representative Town Meeting members to fill the seat vacated by the plaintiff.[3]

The trial court found that the plaintiff had properly brought the declaratory judgment action, but denied him relief on the merits. The plaintiff appealed to this court claiming that: (1) the town of Branford is preempted by the state of Connecticut from restricting the political rights of unclassified state employees; (2) the Home Rule Act does not authorize municipal restrictions on political activities of unclassified state employees; and (3) § 4g of the charter impermissibly infringes on the plaintiff's "constitutional rights to equal protection of the law, speech and expression, association, and voting rights." Because we conclude that the Home Rule Act; General Statutes §§ 7-187 through 7-201; does not authorize a municipality to restrict the candidacy for elective office of *unclassified* state employees, we find error. This conclusion makes it unnecessary to discuss the issues of preemption and constitutionality.

In upholding the validity of § 4g of the charter, the trial court noted that General Statutes § 7-193 (a) empowers municipalities to prescribe "the method by which" members of the elective body of the municipality are elected. The trial court found § 4g to be consistent with the power of the municipality "to promote good government for its citizens and to be consistent with the powers necessarily incident thereto in order to effect the objects and purposes of its creation." We disagree.

"It is settled law that as a creation of the state, a municipality has no inherent powers of its own. *City*

---

[3] Because the trial court did not find § 4g of the charter to be invalid, it did not reach the other issues raised by the plaintiff.

*Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481
(1980); *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d
88 (1976); *New Haven Water Co.* v. *New Haven,* 152
Conn. 563, 566, 210 A.2d 449 (1965); *State ex rel. Coe*
v. *Fyler,* 48 Conn. 145, 158 (1880)." *New Haven Com-
mission on Equal Opportunities* v. *Yale University,* 183
Conn. 495, 499, 439 A.2d 404 (1981). A municipality
has only those powers that have been expressly granted
to it by the state[4] or that are necessary for it to dis-
charge its duties and to carry out its objects and pur-
poses. *City Council* v. *Hall,* supra, 248. See *Pepin* v.
*Danbury,* supra. In determining whether the municipal-
ity had the authority to adopt § 4g, then, "we do not
search for a statutory prohibition against such an enact-
ment; rather, we must search for statutory authority
for the enactment." *Avonside, Inc.* v. *Zoning & Plan-
ning Commission,* 153 Conn. 232, 236, 215 A.2d 409
(1965).

Although the state has granted municipalities the
power to restrict the candidacy of classified state
employees; General Statutes § 5-266a; it has not
granted such a right with respect to unclassified state
employees. The trial court relied in part on General
Statutes § 7-193 (a) in finding valid the adoption of § 4g
by the municipality. General Statutes § 7-193 (a) pro-

---

[4] Connecticut Constitution, Article Tenth (of Home Rule), § 1 provides:
"The general assembly shall by general law delegate such legislative author-
ity as from time to time it deems appropriate to towns, cities and boroughs
relative to the powers, organization, and form of government of such polit-
ical subdivisions. The general assembly shall from time to time by general
law determine the maximum terms of office of the various town, city and
borough elective offices. After July 1, 1969, the general assembly shall enact
no special legislation relative to the powers, organization, terms of elec-
tive offices or form of government of any single town, city or borough,
except as to (a) borrowing power, (b) validating acts, and (c) formation,
consolidation or dissolution of any town, city or borough, unless in the dele-
gation of legislative authority by general law the general assembly shall
have failed to prescribe the powers necessary to effect the purpose of such
special legislation."

vides, in relevant part, that "[t]he number of members in any elective legislative body, the terms of office of such members and the *method by which they are elected* shall be prescribed by charter." (Emphasis added.) The use of the word "method" in § 7-193 (a) strongly suggests that decisions pertaining to the manner in which elections are held are delegated to the municipalities. This is borne out by a perusal of the statutory provisions where the legislature explicitly has granted discretion to the municipalities in the conduct of elections. For example, the election laws; General Statutes c. 146; authorize municipalities to determine, inter alia, the date of municipal elections, § 9-164; the method of transition of offices following elections, § 9-164a; the place where the election is held, § 9-168; and voting districts, § 9-169. The determination of candidate qualifications is much more than a procedural decision. It is clear therefore that candidate qualifications are not within the scope of "method by which they are elected."

The legislature has been very specific in enumerating those powers it grants to municipalities. See General Statutes Title 7. " 'An enumeration of powers in a statute is uniformly held to forbid the things not enumerated.' *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 [1957]; *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 367, 23 A. 186 [1892]." *State ex rel. Barnard* v. *Ambrogio,* 162 Conn. 491, 498, 294 A.2d 529 (1972). Had the legislature intended to grant municipalities the power to restrict the candidacy of unclassified state employees, it easily could have done so. Indeed, the legislature authorizes municipalities to restrict candidacy for municipal elective office in limited instances. For example, the legislature specifically enables municipalities to restrict the candidacy for municipal office of classified state employees, § 5-266a; and of classified civil service employees, § 7-421 (b); and authorizes municipalities to determine the qualifications

of candidates for the position of assessor, § 9-198. There is no explicit statutory authority for municipalities to restrict the candidacy of unclassified state employees to local elective office. Because there is no such explicit authorization, § 4g can stand only if it is necessary for the town of Branford to enable it to fulfill its duties and to carry out its objects and purposes.

General Statutes § 7-148 (c) (7) (H) (xiii) empowers the municipality to "promote the . . . good government . . . of the municipality and its inhabitants."[5] In addition to those powers specifically authorized by the legislature, a municipality has those powers necessary for it to discharge its duties and to carry out its objects and purposes. *City Council* v. *Hall,* supra, 248. While municipalities obviously have a strong interest in the qualifications of candidates for local office, "good government" cannot be read so broadly as to necessitate the grant of power to municipalities to determine candidate qualifications. It is not necessary to the good government of a municipality that the municipality be able to restrict the candidacy for municipal office of unclassified state employees. The legislative grant to municipalities of limited authority to determine candidate qualifications in certain instances; see General Statutes §§ 5-266a, 7-421 and 9-198; indicates the legislative belief that full control by municipalities over candidate qualifications is not necessary. If the power to restrict candidacy were incident to the "good government" provision, then there would be no need for those statutes that do authorize municipal restrictions on candidate qualifications for local office. See *City Council* v. *Hall,* supra, 251.

---

[5] At the time of the trial court's decision, General Statutes § 7-194 (26) empowered a municipality "to protect or promote the peace, safety, good government and welfare" of the town. This language is now found in General Statutes § 7-148 (c) (7) (H) (xiii).

Because there is no authority that empowers municipalities to restrict the candidacy for municipal office of unclassified state employees, the trial court erred in refusing to declare invalid § 4g of the charter.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff declaring § 4g of the charter of the town of Branford to be invalid and for further proceedings in accordance with law.

In this opinion the other judges concurred.