THERESA WARNER, ADMINISTRATRIX (ESTATE OF STEPHEN R. WARNER) *v.* LESLIE-ELLIOTT CONSTRUCTORS, INC., ET AL.
(11927)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued April 5—decision released July 31, 1984

*Michael W. Levy,* for the appellant (plaintiff).

*Robert P. Volpe,* with whom, on the brief, were *Constance L. Epstein* and *Robert B. McLaughlin,* for the appellees (named defendant et al.).

*Winona W. Zimberlin,* with whom, on the brief, was *Edward S. Ludorf,* for the appellee (defendant Hale Manufacturing Company).

SPEZIALE, C. J. The principal issue in this case involves the construction of General Statutes § 52-557j,[1] which shields a landowner from liability for injuries to operators or passengers arising from the operation of certain vehicles, including motorcycles, on his or her land unless a fee is charged by the landowner or the injury is caused by the wilful or malicious conduct of

---

[1] General Statutes § 52-557j provides: "No landowner may be held liable for any injury sustained by any person operating a snowmobile, all-terrain vehicle, as defined in section 14-379, motorcycle or minibike or minicycle, as defined in section 14-1, upon the landowner's property or by any passenger in the snowmobile, all-terrain vehicle or motorcycle, minibike or minicycle, whether or not the landowner had given permission, written or oral, for the operation upon his land unless the landowner charged a fee for the operation, or unless the injury is caused by the wilful or malicious conduct of the landowner."

the landowner. Although we conclude that the legislature has effectively abrogated the common law right to sue such a landowner for negligence resulting in injuries from the operation of a motorcycle, we further hold that the term "landowner" must be narrowly construed to include only those who possess title to the land.

The facts are not in dispute: On August 3, 1979, the plaintiff's decedent, Stephen R. Warner, was riding a motorcycle on a private roadway owned by the defendants Melvin Garfinkel, John Minogue, William G. Dodds, and the Hale Manufacturing Company. The defendant owners, together with the defendant Leslie-Elliott Constructors, Inc., were in possession and control of the property. As the plaintiff's decedent proceeded on the private roadway he struck a "cable or chain" stretched across the roadway at a height of approximately three feet. As a result of his contact with the chain or cable the plaintiff's decedent suffered serious injuries, including a broken windpipe, which caused his death.

The plaintiff, Theresa Warner, administratrix of the decedent's estate, instituted this action for damages for the wrongful death of the plaintiff's decedent alleging that said injuries and death were caused by the negligence of the defendants. The defendants Leslie-Elliott Constructors, Inc., Dodds, Garfinkel, and Minogue did not answer the complaint but moved to strike the complaint on the ground that it did not state a recognizable cause of action. The defendant Hale Manufacturing Company filed an answer and special defenses and later moved for summary judgment on the ground that no genuine issue existed as to any material fact alleged in the complaint. The court granted both the motion to strike and the motion for summary judgment. In its memorandum of decision on both of the motions, the trial court found that the complaint was "insufficient." The trial court found that General Statutes § 52-557j limited landowner liability to situations where "such

owner charged a fee for such operation" or "such injury is caused by the wilful or malicious conduct of such landowner." The trial court concluded that "[s]ince it is evident that the present case, as a matter of law, cannot proceed against any of the defendants, the motion to strike is granted and summary judgment may enter for defendant, Hale Manufacturing Company." The defendants who had filed the motion to strike were later granted judgment against the plaintiff.[2]

The plaintiff filed a motion for rectification of appeal asking the trial court to rule on whether the complaint alleged a wilful or malicious act and whether the statute, as applied to the facts alleged in the complaint, violated the equal protection clauses of the state and federal constitutions. In its memorandum of decision on the plaintiff's motion for rectification of appeal, the trial court found General Statutes § 52-557j to be constitutional and found that the complaint was "insufficient to raise a claim of willful or malicious misconduct."

The plaintiff has appealed from the judgments against her. The plaintiff contends that the trial court erred in holding: (1) that General Statutes § 52-557j would bar the plaintiff's action unless the defendants charged a fee or caused the injury by wilful or malicious conduct; (2) that General Statutes § 52-557j was applicable to the defendant Leslie-Elliott Constructors, Inc., when that defendant was neither alleged nor shown to have been a landowner; and (3) that the complaint failed to allege wilful or malicious conduct. We agree with the plaintiff that the trial court erred in holding that General Statutes § 52-557j is applicable to the defendant Leslie-Elliott Constructors, Inc., because that defend-

---

[2] Pursuant to Practice Book § 157, the defendants who had filed the motion to strike (Leslie-Elliott Constructors, Inc., Dodds, Garfinkel, and Minogue) then moved for judgment against the plaintiff after the plaintiff failed to file a new pleading. The trial court granted the motion and rendered judgment against the plaintiff.

ant was neither alleged nor shown to have been a landowner, but find no error on the plaintiff's other claims.

## I

The plaintiff presents three arguments in support of her contention that General Statutes § 52-557j does not bar this action. First, the plaintiff alleges that the statute has not abrogated the principles of common law liability; second, the plaintiff argues that the statute does not apply to improvements such as roadways; and finally, the plaintiff contends that the statute is unconstitutional in that it impermissibly distinguishes vehicles enumerated in that statute from other motor vehicles.

There is no question that the legislature may abrogate the common law.[3] "The legislature in the exercise of its police power can alter or abolish accepted principles of common-law liability . . . ." *Pierce* v. *Albanese,* 144 Conn. 241, 250, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); see *Gentile* v. *Altermatt,* 169 Conn. 267, 286, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). The statute in this case states in plain language that no landowner will be liable for any injuries to operators or passengers arising from the operation of certain vehicles including motorcycles on the landowner's property *"unless* the landowner charged a fee for the operation, or *unless* the injury is caused by the wilful or malicious conduct of the landowner." (Emphasis added.) General Statutes § 52-557j. This language is clear and unambiguous.

---

[3] We note that the legislature's authority to abrogate the common law is limited constitutionally. See, e.g., Conn. Const., art. I § 10; *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 334–35, 471 A.2d 646 (1984) (*Speziale, C. J.,* concurring); *Gentile* v. *Altermatt,* 169 Conn. 267, 282–87, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976).

To support further her claim that the statute does not abrogate the principles of common law liability, the plaintiff contends that General Statutes § 52-557a, which provides that "[t]he standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee," is inconsistent with the provisions of General Statutes § 52-557j. The plaintiff argues that those provisions are inconsistent because § 52-557j distinguishes business invitees who pay a fee from other business invitees and all social invitees. The legislature is presumed to have knowledge of existing statutes; *Doe* v. *Manson,* 183 Conn. 183, 187, 438 A.2d 859 (1981); and to act with the intention of creating a consistent body of law. *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 230, 439 A.2d 946 (1981). General Statutes § 52-557j, enacted eight years after § 52-557a, carved out an exception or limitation to § 52-557a under certain circumstances.[4] "[I]f one of two enactments is special and particular and clearly includes the matter in controversy, whilst the other is general and would, if standing alone, include it also, and if the inclusion of that matter in the general enactment would produce a conflict between it and the special provisions, it must be taken that the latter were designed as an exception to the general provisions." *Wentworth* v. *L. & L. Dining Co.,* 116 Conn. 364, 369, 165 A. 203 (1933); *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 341, 348 A.2d 596 (1974). Because the two statutes are readily reconciled, they are not inconsistent.

The plaintiff next contends that General Statutes § 52-557j does not apply to improved portions of land such as the roadway where the accident occurred. We

---

[4] Because the question is not before us, we need not decide whether General Statutes § 52-557j would bar recovery to persons such as policemen or firemen coming to the premises, on a vehicle designated in the statute, as a matter of duty or to perform requested services and who were injured due to the landowner's negligence.

find no basis for this claim. The statute uses the all encompassing term "property." Improvements such as private roadways are as much a part of one's property as the natural terrain. "Where the language used by the legislature is plain and unambiguous, there is no room for construction by the courts and the statute will be applied as its words direct." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). An improved portion of property such as a private roadway comes within the purview of General Statutes § 52-557j.

As to the plaintiff's claim that § 52-557j violates the equal protection guarantees of the state and federal constitutions in that it impermissibly differentiates between those vehicles enumerated in the statute and other motor vehicles, "[i]t is well settled that a plaintiff who attacks a statute on constitutional grounds has no easy burden." *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). "If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 597, 479 A.2d 793 (1984). The action involved here, the operation of a motorcycle on private property, does not implicate a fundamental right. Nor does it implicate a suspect class because operators or passengers of motorcycles or other all-terrain vehicles injured while riding on private property do not constitute a " 'discrete and insular' minority for whom strict judicial scrutiny is necessary to uphold its rights. *Graham* v. *Richardson,* 403 U.S. 365, 372, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971)." Id.

The legislature could reasonably conclude that the operation of motorcycles on private property could be more dangerous than the use of automobiles. "There is

a body of experience to suggest that operation of motorcycles is more dangerous than that of four-wheeled vehicles because of their relative instability; see *Shavers v. Attorney General,* 402 Mich. 554, 633–34, 267 N.W.2d 72 (1978) . . . ." *Hartford Accident & Indemnity Co.* v. *Holder,* 37 Conn. Sup. 723, 732–33, 436 A.2d 308 (1981).

Our laws frequently distinguish motorcycles from automobiles. See, e.g., General Statutes §§ 14-40a, 14-49 (b), 14-289b, 14-289d. Motorcycles are expressly excluded from statutory provisions requiring insurers to pay benefits for an injury sustained in the use of any "private passenger motor vehicle." General Statutes § 38-321. The legislature could reasonably conclude that the dangerous nature of motorcycle operation warranted special legislation to protect landowners from liability for negligence.

The trial court did not err in concluding that General Statutes § 52-557j applied to this case and protected landowners from liability for injuries to operators or passengers sustained in the operation of a motorcycle on their property unless explicit conditions were met.

## II

The plaintiff's next claim of error challenges the finding of the trial court that § 52-557j applies to the defendant Leslie-Elliott Constructors, Inc., when there has been no allegation or showing that Leslie-Elliott Constructors, Inc., is a landowner of the property. The defendant Leslie-Elliott Constructors, Inc., urges us to take a broad view of the word "landowner" and construe it as including possessors.

The parties have not cited, nor do there appear to be, any statutes or cases that define the word "landowner." The word "owner" has been variously defined in our statutes and construed by this court. Although

in the context of automobile ownership we have on occasion deemed a possessor to be the owner without regard to title; see *Hope* v. *Cavallo,* 163 Conn. 576, 316 A.2d 407 (1972); when we have construed "owner" in the context of real estate, we have defined the term with reference to title. "When we say, a man has the title to . . . [property], we mean, he is the owner of it; and vice versa." *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 37, 238 A.2d 410 (1968), quoting *Shelton* v. *Alcox,* 11 Conn. 240, 249 (1836). "In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). The commonly approved use of the word "owner" indicates "one that owns: one that has the legal or rightful title whether the possessor or not . . . ." Webster, Third New International Dictionary.

The circumstances of this case warrant a definition of "landowner" restricted to those who hold title. This statute is in derogation of the common law, and, in the absence of legislative intent to the contrary, " ' "[n]o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." ' *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 [1951]." *Edmundson* v. *Rivera,* 169 Conn. 630, 635, 363 A.2d 1031 (1975).

The legislature could easily have enlarged upon this specific meaning had it so desired as it has done in many areas. See, e.g., General Statutes §§ 3-56a, 8-13b, 8-169p (f), 8-291 (d), 14-1 (33), 15-102, 20-419 (6), 22-26bb (e), 38-319 (f), 42-133r (4), 42-159 (2), 47a-1 (e), 52-557f, 52-557k. Indeed, the fact that the legislature so frequently specifically defines "owner" as more encompassing than one who has title suggests the understanding that the word "owner" when not so expanded will be limited to one who has title. If the

word "owner" was commonly understood to be broader than one who has title, then these numerous statutory definitions would be unnecessary. See *Buonocore* v. *Branford,* 192 Conn. 399, 404, 471 A.2d 961 (1984).

Thus, the trial court erred in concluding that General Statutes § 52-557j precluded liability on the part of the defendant Leslie-Elliott Constructors, Inc., where no allegation or showing was made that Leslie-Elliott Constructors, Inc., was a landowner of the property in question.

## III

Lastly, the plaintiff claims that the trial court erred in holding that the complaint failed to allege wilful or malicious conduct. The complaint states that the defendants were negligent, inter alia, in erecting a chain or cable across the roadway "in a manner and under circumstances where it could not readily be seen so as to amount to a trap." The plaintiff asserts that this constitutes wilful conduct. The plaintiff argues that wilful conduct means an act done intentionally and subject to the volition and will of the actor. We disagree.

It is well established that causes of action for negligence and "wilful or malicious conduct" are separate and distinct causes of action. There is a substantial difference between negligence and wilful or malicious conduct, and a complaint should employ language explicit enough to inform the court and opposing counsel clearly that wilful or malicious conduct is being asserted. See *Dumond* v. *Denehy,* 145 Conn. 88, 91, 139 A.2d 58 (1958); *Brock* v. *Waldron,* 127 Conn. 79, 80, 14 A.2d 713 (1940).

We have held that wilful conduct "must encompass both the physical act proscribed by the statute and its injurious consequences." *DeMilo* v. *West Haven,* 189

Conn. 671, 679, 458 A.2d 362 (1983); see *Alteiri* v. *Colasso,* 168 Conn. 329, 362 A.2d 798 (1975); *Rogers* v. *Doody,* 119 Conn. 532, 178 A. 51 (1935).

The mere use of the word "trap" in a complaint, that otherwise is clearly limited to ordinary negligence, is not sufficient to raise a claim of wilful or malicious conduct. See *Kostiuk* v. *Queally,* 159 Conn. 91, 94, 267 A.2d 452 (1970); *Dumond* v. *Denehy,* supra. To raise an allegation of wilful conduct, the plaintiff must clearly plead that the accident was caused by the wilful or malicious conduct of the defendants. The trial court was correct in finding that the complaint was limited to an allegation of negligence.

There is error in part, the judgment for the defendant Leslie-Elliott Constructors, Inc., is set aside, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.