DANIEL D. SIMONS ET AL. *v.* MARY BERNICE CANTY, TOWN CLERK OF WATERTOWN
(12616)

PETERS, C. J., HEALEY, PARSKEY, SHEA and HADDEN, Js.

Argued January 10—decision released March 19, 1985

*James K. Robertson, Jr.,* for the appellants (plaintiffs).

*Steven G. Mednick* and *Franklin G. Pilicy,* with whom, on the brief, was *Keith B. Gallant,* for the appellee (defendant).

*Vincent T. McManus, Jr.,* filed a brief as amicus curiae (town of Wallingford).

PETERS, C. J. The dispositive issue on this appeal is whether the Home Rule Act empowers municipalities to provide for the recall of their elected officials. Six residents and registered voters of the town of Watertown brought suit against the defendant town clerk of Watertown, seeking a writ of mandamus to compel the defendant to certify petitions for recall of two members of the Watertown town council in accordance with § 208 of the town charter.[1] The trial court refused to issue the writ and the plaintiffs appealed. We find no error.

---

[1] Section 208 of the Watertown charter provides:
"Recall of Elected Officials.

"a. Petition Requirements. Every municipal official in the Town, including members of the Board of Education, holding elective office, either by election or appointment, shall be subject to recall from such office by the electors eligible to vote for such office. Such number of electors as equals at least thirty percent (30%) of the registered voters at the last preceding Town election for the office in question may, by a recall petition, filed and certified in accordance herewith, demand the recall of the person holding such office.

"b. Grounds. Every recall petition shall contain a general statement, in not more than two hundred (200) words, of the grounds of such demand for recall, and shall be filed in the office of the Town Clerk on a form prescribed or approved by said Town Clerk which shall require that the address of each signer be listed. Each page of such petition shall contain a statement, signed under penalties of perjury, by the person who circulated the same, setting forth such circulator's name and address and stating that each person whose name appears on said page signed the same in person in the presence of such circulator, that the circulator either knows each such signer or that the signer satisfactorily identified himself/herself to the circulator, and that the signatures on said page were obtained not earlier than sixty (60) days prior to the filing of said petition. Any page of a petition which does not contain such a statement by the circulator shall be invalid. Any circulator who made a false statement in the statement hereinbefore provided shall be subject to the penalty provided for in the General Statutes.

The parties stipulated to the following facts. Section 208 of the Watertown charter provides that a recall election shall be called once thirty percent or more of the electorate sign a recall petition, provided that the signatures are filed with and certified by the town clerk.[2]

"c. Procedure. Upon the receipt of any such petition, the Town Clerk shall forthwith sign and give to the person submitting the same a receipt in duplicate stating the number of pages so filed and the date and time of filing. The Town Clerk shall indicate on each such petition page the date and time of filing, the number of signers thereon who were electors on the last-completed voting list in the Town and shall forthwith certify, in a book to be kept for that purpose, the number of such signers and the percentage they constitute of the number of electors on the last-completed voting list of the Town. Such certificate shall conclude with a statement by the Town Clerk as to whether or not the petition is sufficient for the purpose intended. In checking the signatures on the petition pages, the Town Clerk shall reject any name if such name does not appear on the last-completed voting list. Such rejection shall be indicated by placing an 'R' before the names rejected. The Town Clerk shall place a check-mark before each name to indicate approval. No other marks shall be placed on any petition page. Petitions shall be preserved for a period of five (5) years and then destroyed. If the subject matter of any petition affects the status of the Town Clerk, the duties herein imposed upon the Town Clerk shall be performed by the Registrars of Voters.

"d. Vacancies. If the official named in the petition resigns, in writing, the vacancy shall be filled in accordance with the provisions of this Charter. If any elective official whose recall is sought resigns before such recall vote is taken, a referendum shall not be held. If the official does not resign within five (5) days after a recall petition has been certified as sufficient, the Town Clerk shall forthwith order a special election to be held not less than twenty (20) nor more than thirty (30) days after such certification to determine whether such official shall be recalled. The form of the question to be voted shall be substantially as follows: 'Shall *(here insert the name and title of the elected officials whose recall is sought)* be recalled?' If (a) the number of votes cast in said election equals twenty percent (20%) of the registered voters at the last preceding Town election, and (b) a majority of those voting at said election vote for the recall of such official, then the office shall be deemed vacant and shall be filled in accordance with the provisions of this Charter, otherwise the official shall continue in office as if no recall petition had been filed. No recall petition shall be filed with respect to any official until the official has held office for at least four (4) months of the current term or has less than sixty (60) days remaining in his/her term. A Town Clerk shall not accept a second recall petition with respect to any official during a single term of office."

[2] See footnote 1, supra.

Beginning on August 7, 1984, the plaintiffs circulated petitions for the recall of two members of the Watertown town council. They used a form that had been approved by the defendant and collected more than 3500 signatures of registered Watertown voters. At the time in question, 3192 voters constituted thirty percent of the electorate. On September 26, 1984, and October 5, 1984, the plaintiffs filed their petitions with the defendant for certification. Although the defendant made no objection to the form of the petitions or to the form or number of the signatures, she refused to certify the petitions on the ground that § 208 was invalid.

The plaintiffs raise two interrelated issues on appeal. They contend that the trial court erred: (1) in holding that Watertown lacked the authority to enact a provision for recall of its elected officials; and (2) in refusing to issue a writ of mandamus to compel the defendant to certify the petitions.

I

The major premise of the plaintiffs' appeal is that Watertown had the authority to adopt procedures for the recall of municipal officials. This is a question of first impression. Before the adoption of article tenth, § 1 of our constitution, the legislature had by special act authorized five municipalities to exercise the power of recall.[3] Under the terms of article tenth, § 1,[4] the

[3] The five municipalities with special act recall authorization are: New Haven, adopted in 1952 under authority granted by 16 Spec. Acts 817, No. 159; 17 Spec. Acts 1224, No. 449; 18 Spec. Acts 512, No. 181; 23 Spec. Acts 618, No. 551; Bristol, adopted in 1939 under 23 Spec. Acts 489, No. 489; Milford, adopted in 1959 under 29 Spec. Acts 142, No. 139 (as revised in 1975); Stratford, adopted in 1921 by 18 Spec. Acts 1048, No. 479 (as revised in 1975); Westport, adopted in 1957 by 28 Spec. Acts 427, No. 348 (Home Rule revision 1979).

[4] Article tenth, § 1, of the Connecticut constitution provides:

"The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and

legislature can no longer enact special legislation in this area. The only case in which we considered recall of municipal officeholders concerned one of the five municipalities that had been granted the power by special act; see *State ex rel. Lewis* v. *Turney,* 97 Conn. 496, 117 A. 499 (1922); and is therefore not relevant to this appeal. The plaintiffs maintain that Watertown's authority to hold recall elections stems from four independent entitlements: article tenth, § 1, of the Connecticut constitution;[5] General Statutes § 7-193 (a);[6]

boroughs relative to the powers, organization, and form of government of such political subdivisions. The general assembly shall from time to time by general law determine the maximum terms of office of the various town, city and borough elective offices. After July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough, except as to (a) borrowing power, (b) validating acts, and (c) formation, consolidation or dissolution of any town, city or borough, unless in the delegation of legislative authority by general law the general assembly shall have failed to prescribe the powers necessary to effect the purpose of such special legislation."

[5] For the text of that constitutional provision, see footnote 4, supra.

[6] "[General Statutes] Sec. 7-193. REQUIRED PROVISIONS. Any charter adopted under the provisions of this chapter shall conform to the following requirements.

"(a) The municipality shall have a legislative body, which may be: (1) A town meeting; (2) a representative town meeting; (3) a board of selectmen, council, board of directors, board of aldermen or board of burgesses; or (4) a combination of a town meeting or representative town meeting and one of the bodies listed in subdivision (3). In any combination, the body having the greater number of members shall have the power to adopt the annual budget and shall have such other powers as the charter prescribes, and the body having the lesser number of members shall have the power to adopt, amend and repeal ordinances, subject to any limitations imposed by the general statutes or by the charter. The number of members in any elective legislative body, the terms of office of such members and the method by which they are elected shall be prescribed by the charter.

"(b) The municipality shall have a chief executive officer, who may be one of the following: (1) The first selectman; (2) a chief administrative officer appointed by the board of selectmen; (3) a mayor elected by the electors of the municipality; (4) a warden elected by the electors of the borough; (5) a town, city or borough manager appointed by the board of selectmen, the council, the board of directors, the board of aldermen or the board of burgesses; (6) a chief administrative officer appointed by the mayor. Any

General Statutes § 7-148 (c) (7) (H) (xiii);[7] and municipalities' inherent power over matters of local concern.[8]

The sources of municipal authority are well defined. Municipalities, because they are creations of the state, have no inherent legislative authority. See *New Haven Commission on Equal Opportunities* v. *Yale University,* 183 Conn. 495, 499, 439 A.2d 404 (1981); *Connelly* v. *Bridgeport,* 104 Conn. 238, 252, 132 A. 690 (1926); *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131, 149, 35 A. 24 (1896), aff'd sub nom. *Williams* v. *Eggleston,*

---

municipality having a manager as its chief executive officer may also have a mayor who shall be the presiding officer of its legislative body, shall be the ceremonial head of such municipality and shall have such other powers and duties as the charter prescribes. The powers, duties and term of office of the chief executive officer shall be those prescribed by the general statutes and he shall have such other powers and duties as the charter prescribes.

"(c) Every municipality shall have such other municipal officers, departments, boards, commissions and agencies as are provided by the general statutes or by the charter. Such officers, departments, boards, commissions and agencies shall be elected, appointed and organized in the manner provided by the general statutes, except as otherwise provided by the charter or by ordinances or resolutions adopted pursuant to such charter."

[7] "[General Statutes] Sec. 7-148. SCOPE OF MUNICIPAL POWERS. . . . (c) POWERS. Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes . . . (7) REGULATORY AND POLICE POWERS. . . . (H) PUBLIC HEALTH AND SAFETY. . . . (xiii) Make and enforce police, sanitary or other similar regulations and protect or promote the peace, safety, good government and welfare of the municipality and its inhabitants."

[8] Although the plaintiffs raised no other constitutional claims either in the trial court or on appeal, the amicus curiae town of Wallingford urges us in its brief to find authority for recall of municipal officeholders in article first, § 2, of the Connecticut constitution. We decline to consider this argument. The brief of an amicus curiae may, according to our rules, "set forth facts or questions of law that have not been presented by the parties." Practice Book § 3060H. Nonetheless, absent extraordinary circumstances not present here, our reluctance to determine a constitutional question of first impression that was neither raised at trial nor relied upon by the parties on appeal outweighs the policy represented by Practice Book § 3060H. Cf. Practice Book § 3063; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

170 U.S. 304, 18 S. Ct. 617, 42 L. Ed. 1047 (1898); *Webster* v. *Harwinton,* 32 Conn. 131, 138–39 (1864); Littlefield, "Municipal Home Rule—Connecticut's Mature Approach," 37 Conn. B.J. 390, 404-405 (1963); 2 McQuillin, Municipal Corporations (3d Ed. Rev. 1979) § 10.11. They can wield only those powers expressly granted to them by the legislature; *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980); *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88 (1976); or necessary to the exercise of an expressly delegated power. *Perretta* v. *New Britain,* 185 Conn. 88, 102, 440 A.2d 823 (1981); *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965). The constitutional provision cited by the plaintiffs merely restates the basic rule: "The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions." Conn. Const., art. X § 1. In sum, the sole font of municipal authority is legislative delegation in the form of a general statute or a special act adopted prior to the effective date of article tenth.

The rules that determine whether a power has been delegated to a municipality are also well established. "The legislature has been very specific in enumerating those powers it grants to municipalities. See General Statutes Title 7." *Buonocore* v. *Branford,* 192 Conn. 399, 403, 471 A.2d 961 (1984). "An enumeration of powers in a statute is uniformly held to forbid the things not enumerated." *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957); *State ex rel. Barnard* v. *Ambrogio,* 162 Conn. 491, 498, 294 A.2d 529 (1972). Delegation of authority to municipalities is therefore narrowly construed. See *Gregory* v. *Bridgeport,* 41 Conn. 76, 86 (1874). In determining whether a municipality has the authority to adopt a

challenged charter provision, "we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment." *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236, 215 A.2d 409 (1965).

In light of these governing principles, the plaintiffs' principal argument is that towns are authorized to adopt charter provisions for the recall of local officials because of the express provisions of General Statutes § 7-193 (a), which requires all municipalities to maintain some form of an elective legislature. In particular, the plaintiffs point to its provision that "[t]he number of members in any elective legislative body, the terms of office of such members and the method by which they are elected shall be prescribed by the [municipal] charter." The plaintiffs contend that the power to recall members of the town council is included in the power to set the terms of office of municipal legislators.

The plaintiffs' invocation of § 7-193 is unpersuasive. Factually, their argument founders on their admission that one who replaces a recalled official would serve only for the remainder of the ousted official's term. A recall that substitutes one officeholder for another does not alter the underlying term of office and § 7-193 is thus inapplicable on its face. Further, the express purpose of § 7-193 is to prescribe the basic structural division of municipal government into legislature, executive officer, and subordinate agencies and officials.[9] Charter provisions for recall do not fit naturally into a listing of features that are "basic and essential for all municipalities." *Canavan* v. *Messina,* 31 Conn. Sup. 447, 450, 334 A.2d 237 (1973).

The plaintiffs' alternate claim is that the power to recall municipal officials is necessary to carrying out

---

[9] For the text of that statute, see footnote 6, supra.

the duty delegated to localities by General Statutes § 7-148 (c) (7) (H) (xiii) to "protect or promote the . . . good government . . . of the municipality and its inhabitants." The short answer to this claim is that whether it is necessary to good government to be able to recall officeholders is a legislative question that has thus far been answered in the negative. The General Assembly has enacted express legislation when delegating to local governments various powers far less significant than that of recalling elected officials. See, e.g., General Statutes § 7-148 (c) (7) (F) (iii) (prohibition of nighttime loitering by minors); General Statutes § 7-148 (c) (7) (H) (iii) (regulation of auctions and garage and tag sales). A fortiori, if the legislature had intended to confer the recall power on municipalities it would have done so explicitly. Cf. *City Council v. Hall,* supra, 249–50. We have consistently rejected claims that municipalities may exercise important functions based solely on their power to promote good government; see *Buonocore v. Branford,* supra; *City Council v. Hall,* supra; and we decline to imply recall as a necessary, though unstated, municipal power. Section 208 of the Watertown charter is therefore invalid.[10]

Our finding that municipalities lack the authority to enact recall provisions is in accord with the most recent legislative activity in this area. In 1974 and again in 1978, the General Assembly was advised by its Office of Legislative Research that the Home Rule Act did not authorize municipal recall elections. See O.L.R. Reports 74-139 and 78-112. The 1978 report was drawn up to identify areas where revision of the act might be desirable. See remarks of Representative Joseph J. Farricielli, 23 H. R. Proc., Pt. 15, 1980 Sess., p. 4552. A bill was then drafted that initially included a section

---

[10] Because there is no positive authorization for § 208, we need not address the defendant's claim that General Statutes § 7-192a prohibits municipal recall elections.

conferring on municipalities the power "to provide, within the charter, for a method to recall or remove, by popular vote, municipal elected officials." Raised Committee Bill No. 5674, 1980 Sess., § 126 (51). This section was, however, deleted before the bill reached the floor of the House. See Substitute House Bill No. 5674, 1980 Sess., § 115.[11] The question of empowering municipalities to recall local officials has thus been recently considered by the legislature. The legislature's policy decision to reject local recall is a decision that we are bound to respect.

## II

The invalidity of § 208 of the Watertown charter requires affirmance of the trial court's refusal to grant the plaintiffs' request for a writ of mandamus. Mandamus is an extraordinary remedy, designed to enforce a plain, positive duty and available only to one who has a clear legal right to performance of that duty. *Cheshire Taxpayers' Action Committee, Inc.* v. *Guilford,* 193 Conn. 1, 5, 474 A.2d 97 (1984). "Since mandamus neither gives nor defines rights which one does not already have, it cannot, and does not, act upon a doubtful and contested right. *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253 [1960]." *Gerrity* v. *Bisciglia,* 178 Conn. 235, 238–39, 423 A.2d 871 (1979); *McAllister* v. *Nichols,* 193 Conn. 168, 171–72, 474 A.2d 792 (1984). The plaintiffs' right to certification of petitions under § 208 was, even before this decision, far less than clear. Indeed, the Watertown Charter Revision Commission adopted § 208 despite advice from counsel that its authority to do so was seriously suspect. While it is unclear whether the defendant had the authority to judge the validity

---

[11] Substitute House Bill No. 5674 was itself substantively amended before it was enacted as Public Acts 1980, No. 80-474. See 23 H. R. Proc., Pt. 16, 1980 Sess., pp. 4612-20; 23 S. Proc., Pt. 11, 1980 Sess., pp. 3520–22.

of the recall provision,[12] the plaintiffs' inability to show a clear legal right to certification forecloses their access to mandamus.

There is no error.

In this opinion the other judges concurred.

---

[12] Our recent decisions in *Cheshire Taxpayers' Action Committee, Inc.* v. *Guilford,* 193 Conn. 1, 6, 474 A.2d 97 (1984), and *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 740, 462 A.2d 379 (1983), established the principle that high municipal officials may refuse to hold a referendum on a measure proposed by the voters through the initiative process if the proposal clearly exceeds the legislative power of the electorate. Given the plaintiffs' clear legal right in those cases to invoke "the traditional and time-honored power of the people to legislate directly through the process of initiative and referendum"; *Cheshire Taxpayers' Action Committee, Inc.* v. *Guilford,* supra; see General Statutes § 7-187 et seq.; our analysis focused on the duty of the defendants to perform the requested act. Here, however, the plaintiffs were not exercising any such clear legal right when they requested certification of their recall petitions. Accordingly, we need not reach the question of whether a town clerk has powers of refusal similar to that of a mayor or town council.