[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, John F. Carr, Jr., seeks a writ of mandamus to compel the defendant Planning and Zoning Commission ("Commission") to sign the plaintiff's mylar subdivision plan and compel the Board of Selectmen ("Board") to approve the subdivision CT Page 10548 road.
The plaintiff is the owner of property located on Route 133 in the Town of Bridgewater, Connecticut. (Plaintiff's Exhibit 1.) By application dated October 3, 1989, the plaintiff applied to the defendant Commission for approval of a residential subdivision of the property. (Plaintiff's Exhibit 4). The plaintiff's application was received by the Commission at its regular meeting of October 11, 1989. (Plaintiff's Exhibit 9).
At the November 6, 1989 regular meeting of the Commission the plaintiff received a Memorandum prepared by Robert D. King, consultant to the Town of Bridgewater, which listed eight (8) items which needed to be completed or revised in accordance with the subdivision regulations. (See Plaintiff's Exhibit 10). A map submitted by plaintiff's counsel showing that information was submitted under cover of a November 27th letter. (plaintiff's Exhibit 11). Thereafter, plaintiff received another Memorandum, dated December 11, 1989, in which it was suggested that "[t]he applicant advise the Commission as to whether the above listed maps or plans are complete and accurate." (Plaintiff's Exhibit 12). The Chairman of the Commission was advised by letter dated January 5, 1990, that the maps were both complete and accurate. (Plaintiff's Exhibit 14).
At its March 14, 1990 regular meeting, the Commission approved plaintiff's subdivision application, but made that approval subject to the satisfaction of four conditions. Those conditions were:
 a. modification numbers 2 through 23 and number 25 of Mr. King's memorandum dated March 13, 1990 be adopted;
 b. subject to the approval of the road by the Board of Selectmen; (that the construction plans have been signed and dated by the Board of Selectmen);
 c. notation be placed on the subdivision maps which states that the wells be drilled and tested on each lot before a building permit is issued;
 d. delete additional Open Space/Conservation Easement other than that shown on the Subdivision Plan revised to January 18, 1990, and the remainder of which, up to 15%, be in the area of Lot # 10. CT Page 10549
Plaintiff's Exhibit 23.
This decision by the Commission stated that it was "subject to approval of the road by the Board of Selectmen." (Plaintiff's Exhibit 23 at 3, 41 at 9). The Town of Bridgewater, however, then had and still has a Road Ordinance requiring all streets in subdivisions to be reviewed and approved by the Selectmen. (Plaintiffs Exhibit 50, 51; Defendants Exhibit 1). In addition, the plaintiff admitted that he would have had to comply with the Road ordinance regardless of whether the Commission had noted that fact in its subdivision approval. (Transcript at 34).
Section 3.8 of the Bridgewater Subdivision Regulations, entitled "Completion of Required Modifications and Conditions," provides, in pertinent part:
 When the Commission modifies and approves an application it shall promptly advise the applicant of the required modifications to the maps, plans or other application documents. No application shall be endorsed for filing until the required modifications have been completed and submitted in the final required form.
 All approvals shall be conditioned upon the applicant's presentation and recording of any deeds or easements required by the Commission . . .
 All of the above information, documents or performance guaranties shall be submitted within forty-five (45) days of the Commissions's (sic) approval. If not so filed the subdivision approval shall be deemed automatically void.
Plaintiff's Exhibit 2, at 9-10. This section requires an applicant who has received approval of a subdivision plan subject to modifications to file a revised final plan within 45 days after approval. (Plaintiff's Exhibit 2). This Regulation also expressly states, "[i]f not so filed, the subdivision approval shall be deemed automatically void." Id. The plaintiff admitted that he did not file modified plans within the required time. (Transcript at 30). In fact, modified plans have never been submitted to the Commission, although plaintiff did send amended plans to King over one year later. (Transcript at 61).
On March 20th 1990, plaintiff appeared at a special meeting of CT Page 10550 the defendant Board of Selectmen, to request approval of the subdivision road. (See Plaintiff's Exhibit 26). The defendant Board approved the subdivision road, but conditioned its approval upon plaintiff's providing a minimum sight line distance of 450 feet at the southerly intersection of the subdivision road with Route 133. This sight line distance was based on the concerns of King, and the Selectmen's own knowledge of traffic conditions, mainly excessive speed, on Route 133. (Transcript at 52, 59). This "condition" actually represented a concession to the developer, as Section 3.1.7 of the Road Ordinance would ordinarily require a 525-foot sight line. (See Plaintiff's Exhibit 20 at 2).
In order to accommodate the Board's requirement of a 450 foot sight line, the plaintiff had to obtain approval of the Connecticut Department of Transportation ("DOT"), (Transcript at 18), because achieving the 450 foot sight line was impossible with out relocating the travel way of Route 133 to the east. (Transcript at 18).
The plaintiff admitted that he had knowledge of the Road Ordinance prior to submitting his subdivision application. (Transcript at 34). Moreover, the plaintiff's trial exhibits show that the sight line requirements were raised by King in memoranda to the Commission several times prior to its decision. This sight line requirement was also raised on one occasion prior to the submission of plaintiff's application. (Plaintiff's Exhibits 8 at 2, 10 at 3, 18 at 1, 20 at 2). Each of these memoranda specifically refer to section 3.1.7 of the Road Ordinance. In addition, the written responses of the plaintiff's engineer is additional proof that plaintiff was aware of King's memoranda. (Plaintiff's Exhibits 11, 13, 21). The plaintiff, however, never resolved the sight line issue, or even addressed it, with the Board until after the Commission had approved the subdivision application. (Transcript at 35-36). The plaintiff also testified that he has been a developer for the last eight to ten years and that he was aware of the need to obtain such a permit when he submitted his subdivision application. (Transcript at 3, 34).
In August of 1991, approximately one year and five months after receiving approval of the defendant Board, plaintiff obtained the DOT's approval by agreeing to pay for the relocation of Route 133. (Transcript at 19). However, during this one year and five month period the plaintiff never sought an extension of the 45 day period from the defendant Commission nor did the plaintiff inform the Commission of the status of the permit application with the CT Page 10551 DOT. (Transcript at 41). The plaintiff could now meet the defendant Board's condition and provide a 450 foot sight line. The plaintiff returned to the defendant Board on August 13, 1991 to request the subdivision road construction permit, only to be told that the defendant Board believed that his subdivision was no longer valid under Section 3.8 of the Subdivision Regulations. (Transcript at 22; see also Plaintiff's Exhibit 38). The defendant Board for that reason refused to issue the road construction permit. (Transcript at 22).
Subsequently the plaintiff discovered that the defendant Commission had, at its regular meeting held on December 12, 1990, without notice to the plaintiff, amended its agenda to add plaintiff's application thereto and proceeded to acknowledge that plaintiff's failure to provide the required documents within the forty-five day filing period as provided by the Town of Bridgewater Subdivision Regulations Section 3.8. (See Plaintiff's Exhibit 2). As a result, plaintiff's application was now deemed void. (See Plaintiff's Exhibit 33).
On November 19, 1991 the plaintiff filed this present mandamus action against the defendants, Commission and Board requesting a writ of mandamus to compel the defendant Commission to sign the plaintiff's mylar subdivision plan and to compel the Board to approve the subdivision road.
The Connecticut Superior Court is empowered to issue a writ of mandamus "in any case in which a writ of mandamus may by law be granted." General Statutes Section 52-485 (a). Mandamus is an extraordinary remedy which is designed to enforce the performance of a plain positive duty and the writ will issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled. Halpern v. Board of Ed.,196 Conn. 647, 654, 495 A.2d 264 (1985). Furthermore, mandamus does not confer or define rights which one does not already have, nor can it act upon a doubtful and contested right. Simons v. Canty,195 Conn. 524, 533, 488 A.2d 1267 (1985). Mandamus commands performance of a duty only upon the request of one who has a complete and immediate legal right. Sterner v. Saugatuck Harbor Yacht Club Inc., 188 Conn. 531, 533-34, 450 A.2d 369 (1982). The party seeking performance of the duty has the burden of establishing his clear legal right to performance. Waterbury Teachers Ass'n v. Furlong, 162 Conn. 390, 414, 294 A.2d 546 (1972)
A writ of mandamus will lie only if the plaintiff can CT Page 10552 establish: "(1) that the plaintiff has a clear legal right to the performance of that duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law." Vartuli v. Sotire, 192 Conn. 353, 365, 472 A.2d 336 (1984). Satisfaction of this demanding test does not, however automatically compel issuance of the writ. Hackett v. New Britain, 2 Conn. App. 225,229, 477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710
(1984). Rather, in deciding the propriety of of a writ of mandamus, the trial court exercises discretion rooted in the deep principles of equity. Sullivan v. Morgan, 155 Conn. 630, 635, 236 A.2d 906
(1967).
Essentially, the plaintiff argues that the defendant Commission's approval of the Subdivision plan subject to the approval of the subdivision road by the Board was a conditional approval and, thus, constituted a failure to act under Carpenter v. Planning and Zoning Comm'n, 176 Conn. 581, 597, 409 A.2d 1029
(1979). Hence, plaintiffs application was approved as a matter of law.
The defendant Commission, in response, argues that the plan was approved and modified. Specifically, the Commission contends that its statement that the plan was "subject to approval of the road by the Bridgewater Board of Selectmen" was not a condition because the Town of Bridgewater's Road Ordinance required all streets in subdivisions to be reviewed and approved by the Board. Thus, the plaintiff would have had to comply with the Town Road Ordinance regardless of whether the Commission noted that fact in approving the subdivision plan.
It is submitted that plaintiff's request for mandamus compelling the defendant Commission to sign plaintiff's subdivision plan should be denied because the defendant "acted" within the sixty-five day period as prescribed by General Statutes Section8-26(d).
The Legislature has authorized a municipal planning and zoning commission to consider and act upon proposed subdivision applications. General Statutes Sections 8-26, 8-26d. Connecticut General Statutes Section 8-26 provides, in pertinent part, that "[t]he commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith . . . within the period of time permitted under section 8-26d. . . . The failure of the commission to act thereon CT Page 10553 shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand." General Statutes Section 8-26. General Statutes Section 8-26d provides in pertinent part:
 In all matters wherein a formal application, request or appeal is submitted to a planning commission under this chapter and a hearing is held on such application, request or appeal, such hearing shall commence within sixty-five days after receipt of such application, request or appeal and shall be completed within thirty days after such hearing commences. A decision on such matters shall be rendered within sixty-five days after completion of such hearing.
General Statutes Section 8-26d.
Therefore, a planning commission is only authorized to take one of three courses of action: "it can approve the application exactly as it was submitted; it can make changes to the application to ensure compliance with the subdivision regulations and computability with the municipality's comprehensive plan, and then approve the application as so modified; or it can disapprove the application outright." Moscowitz v. Planning and Zoning Comm'n,16 Conn. App. 303, 309, 547 A.2d 569 (1988). Failure to act within the prescribed sixty five day period results in approval of the subdivision by operation of law. Caldrello v. Planning Board,193 Conn. 387, 392, 476 A.2d 1063 (1984).
"Nothing in the subdivision approval statute, Section 8-26, allows for the imposition of conditions upon the planning and zoning commission's approval of a subdivision plan; the statute merely provides for the commission to `approve, modify and approve, or disapprove' a subdivision application." Carpenter v. Planning and Zoning Comm'n, supra, 592. The Connecticut Supreme Court has held, however, that where the planning and zoning commissions imposed "conditions" are required by local regulations, the local regulations "provide sufficient authority for the imposition of the condition by the [commission]." Nicoli v. Planning and Zoning Commission, 171 Conn. 89, 94, 368 A.2d 24 (1976); see also, Timber Trails Corp. v. Planning and Zoning Comm'n, 222 Conn. 380, 392
(1992) (where the court held that the condition of DPUC approval was a valid exercise of the commission's police power according to the regulations governing it); Shailer v. Planning Zoning Comm'n, CT Page 1055426 Conn. App. 17, 28, 596 A.2d 1336 (1991) (where the court upheld the condition imposed by the commission because the condition was imposed for the purpose of ensuring safety).
In Nicoli, a planning board had approved a subdivision application "subject to" changes in the proposed roads and accessways. Relying on the provisions regarding traffic safety and adequate thoroughfares contained in both General Statutes Section8-25 and the municipality's subdivision regulations, the court determined that there was sufficient authority for the modifications ordered by the planning commission. Nicoli, supra,
In the case at bar, the Subdivision Regulations expressly refer to the Town Road Ordinance. For instance, Subdivision Regulation 6.1 provides, in pertinent part, "[t]he construction plans for streets . . . required by these Regulations shall be in accordance with the Town Road Ordinance and approved in writing by the Board of Selectmen . . . ." Town of Bridgewater Subdivision Regulations 6.1; Plaintiff's Exhibit 2. Section 4.4.2 of the Subdivision Regulations requires that construction plans contain "all information required by the Town Road Ordinance." See Town of Bridgewater Subdivision Regulations Section 4.4.2; Plaintiff's Exhibit 2. Section 4.4.9 requires that the plans provide a space for a signature of a representative of the Board, indicating its approval. See Town of Bridgewater Subdivision Regulations Section 4.4.9; Plaintiff's Exhibit 2. Since the Subdivision Regulations expressly refer to the Road Ordinance in several places, making it quite apparent that satisfaction of the ordinance is essential to effectuate subdivision approval, these requirements mandated by the Town Subdivision Regulations are necessary to approve the subdivision plan. As a result the Commission had valid grounds for modifying and approving the application. Thus, the defendant modified and approved the plan within the sixty five day period by conditioning approval of the subdivision road by the Board.
The plaintiff's reliance on Carpenter, supra, can be readily distinguished from the case at bar. In Carpenter, the planning and zoning commission conditioned its approval of the subdivision plan on the "approval of the highway superintendent." Carpenter, supra, 591. The court also noted that no local regulation of the town authorized the imposition of conditions. Id., at 592. In the case at bar, however, there is a Town of Bridgewater Road Ordinance that specifically requires all streets in subdivisions to be reviewed and approved by the Board of Selectmen. (Defendants Exhibit 1). A town is empowered through the enabling legislation to set standards CT Page 10555 for local roads. See General Statutes Section 7-148 (c)(6)(c). Thus, unlike the defendant in Carpenter, the Commission did not act to create that obligation for the plaintiff. That obligation was required by the Town Road Ordinance.
In addition, in Carpenter, there was no indication in the record that the approval of the highway superintendant was a reasonable probability. There the court concluded that the commission had not taken valid action within the prescribed sixty-five days of submission of the applicants plan and that the plan was, therefore, automatically approved at that time. Carpenter, supra, 592-93.
In the case at bar there was a reasonable probability that the subdivision road would be approved by the defendant Board. In fact, the Board approved the subdivision road provided the plaintiff would provided a sight line of 450 feet. This approval of the Board was given six days after the Commissions approval of the plaintiff's subdivision plan.
The court finds that the defendant Commission did "act" upon plaintiff's application within the required sixty-five days. Accordingly, the plaintiff has not established a "clear legal right" to the performance of a duty by the defendant Commission, namely, the signing of the mylar plan. Vartuli, supra, 365.
The plaintiff next argues that the forty-five day filing requirement of Section 3.8 of the Bridgewater Subdivision Regulations is tolled until said compliance is no longer dependant is submitted that this forty-five day filing requirement as required by section 3.8 of the Town of Bridgewater Subdivision Regulations is not tolled.
The rules of statutory construction apply to the interpretation of local regulations. Double I Ltd. Partnership v. Planning and Zoning Comm'n, 218 Conn. 65, 73, 588 A.2d 624 (1991). In the construction of statutes and regulations, great deference is to be accorded the construction of the statute by the agency charged with its enforcement. Roy v. Centennial Ins. Co., 171 Conn. 463,473, 370 A.2d 1011 (1976).
A zoning regulation is a local legislative enactment, and in its interpretation the court is to discern the intent of the legislative body as manifested in the words of the regulation. Spero v. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590
CT Page 10556 (1991). Since zoning regulations are in derogation of common law property rights, the regulations cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. Capalbo v. Planning and Zoning Board of Appeals, 208 Conn. 480, 490-91,547 A.2d 528 (1988). The words used are to be interpreted in accordance with their natural and ordinary meaning; and "any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected." Spero, supra, 441. Common sense must inform the construction of the regulation, and the court assumes that a rational and reasonable result was intended by the local legislative body. Id.
Section 3.8 of the Bridgewater Subdivision Regulations, entitled "Completion of Required Modifications and Conditions," provides, in pertinent part:
 When the Commission modifies and approves an application it shall promptly advise the applicant of the required modifications to the maps, plans or other application documents. No application shall be endorsed for filing until the required modifications have been completed and submitted in the final required form.
 All approvals shall be conditioned upon the applicant's presentation and recording of any deeds or easements required by the Commission . . .
 All of the above information, documents or performance guaranties shall be submitted within forty-five (45) days of the Commission's (sic) approval. If not so filed the subdivision approval shall be deemed automatically void.
Plaintiff's Exhibit 2, at 9-10. This section is quite clear in that it requires an applicant who has received approval of a subdivision plan subject to modifications to file a revised final plan within 45 days after approval. (Plaintiff's Exhibit 2). This Regulation also expressly state, "[i]f not so filed, the subdivision approval shall be deemed automatically void." Id. The plaintiff admitted that he did not file modified plans within the required time. (Transcript at 30). In fact, modified plans have never been submitted to the Commission, although plaintiff did send amended plans to King over one year later. (Transcript at 61).
In addition, the plaintiff did not inform the Commission or CT Page 10557 the Board of the status of plaintiff's application for an encroachment permit filed with the DOT for the entire one year and five months. (Transcript at 41). The plaintiff never even requested an extension of time from the Commission. Id. Thus, the plaintiff cannot now be heard to say that this forty-five day period required by Section 3.8 of the Subdivision Regulations is tolled when the plaintiff failed to keep the Commission and Board informed as to the status of that permit process. To allow otherwise would in essence allow future applicants to unilaterally manipulate or suspend regulatory requirements by choosing the sequence under which a series of required applicants or permits will be filed with different agencies, resulting in administrative chaos.
As for the subdivision road, the plaintiff has no right to have the road permit signed by the Board since the plaintiff failed to provide the required subdivision documents to the Commission within the forty-five day filing period which voided the approval of the subdivision. (See Transcript at 22).
SUSCO, J.