[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiffs, the Town of Farmington, the Farmington Police Department and its Chief of Police, Leroy Bangham, appeal a decision of the Defendant Board of Firearms Permit Examiners which ordered Plaintiffs to issue a permit to carry a pistol or revolver to David W. Noetzel, a Farmington resident.
The Board acted pursuant to General Statutes § 29-32b. The Plaintiffs' appeal is authorized by General Statutes § 4-183.
The court, after reviewing the entire case record, finds the following pertinent facts:
On or about January 17, 1995, Noetzel went to the Farmington Police Department to submit an application for the issuance of a permit to carry a pistol or revolver. At that time, Noetzel was prepared to submit his application on a form mandated by General Statutes § 29-28a. He was also prepared to be fingerprinted, and to pay the permit application fee required by § 29-30.
When he attempted to submit his application, Noetzel was informed by a Farmington police officer that his permit application would not be processed by the department unless Noetzel complied with two additional requirements. These extra prerequisites were as follows:
 1. Noetzel would have to pay the sum of $24, in addition, to the statutory fee of $35, to reimburse Farmington for the cost charged by the Federal Bureau of Investigation to process and check Noetzel's fingerprints;
 2. In addition to the application form, Noetzel would have to submit three letters of character reference.
CT Page 1331-A
Neither of the forgoing conditions is required by the state statutes. Each is apparently required by the Farmington Police Department of anyone applying there for a locally issued permit to carry a pistol or revolver.
Farmington contends that when Noetzel was advised of these additional requirements, he "elected" not to submit his application. Noetzel asserts that he was informed by the Farmington police officer that his application would not be accepted unless he paid the fee for FBI processing and submitted the character reference letters. He argues that the town's insistence on conditions not required by state statute was illegal, and effectively barred him from applying for the gun permit, despite the fact that he was in compliance with all of the state's requirements.
The Plaintiffs maintain that the FBI had for many years processed and checked the fingerprints of gun permit applicants without billing local police departments. Pursuant to a recent change in that policy, the FBI now bills a fee of $24 per applicant to the local departments for this service. Plaintiffs argue that this FBI "user fee" was not envisioned by the legislature when it passed § 29-30 and should be borne by the prospective permit recipients.
With respect to the requirement for three letters of character reference, Farmington maintains that this condition is a tool which aids police in their statutorily mandated (General Statutes § 29-29) investigation of an applicant's suitability to carry firearms.
On January 20, 1995, Noetzel appealed the actions of the Plaintiffs to the Board, claiming in effect that Plaintiffs' refusal to accept his application until he complied with the additional requirements constituted a de facto refusal to issue him a permit.
The Board, by letters dated January 30, 1995, notified Noetzel and the Farmington Police that it would conduct a hearing on the alleged refusal. At that time, the hearing was tentatively scheduled for April 5, 1995.
On February 7, 1995, Plaintiff Bangham wrote to the Board. In this letter, the police chief stated that his department had no CT Page 1331-B record of Noetzel ever applying for a pistol permit and, hence, his agency had never refused to issue one. In correspondence dated February 8, 1995, the Board furnished Bangham with documents outlining the specifics of Noetzel's complaint. The Board subsequently notified both Noetzel and the Plaintiffs that its hearing would be held on April 17, 1995.
On that date, the Board conducted the administrative hearing on this complaint, pursuant to General Statutes § 29-32b. Neither the Plaintiffs nor their legal representatives attended this hearing. The plaintiffs also failed to respond to a questionnaire from the Board, which elicited responses to, and information about, Noetzel's allegations.
By letter dated April 28, 1995, the Board informed Plaintiffs that it was sustaining Noetzel's administrative appeal. The Board predicated its decision on the fact that Plaintiffs had failed to provide information to the Board as required by General Statute § 29-32b(c). The Board ordered that the Plaintiffs issue a pistol permit to Noetzel forthwith.
On May 4, 1995, the Plaintiffs, through counsel, filed a motion for reconsideration and request for rehearing with the Board. This motion was subsequently denied.
Plaintiffs now appeal both the denial of their motion for reconsideration, and the Board's order that they issue Noetzel a pistol permit.
A threshold issue raised by the Plaintiffs is one of jurisdiction. Basically, the Plaintiffs contend that General Statutes § 29-32b(b) only allows the Board to consider appeals where local issuing authorities have refused to issue a permit, or have refused to provide a permit application. Farmington argues that Noetzel was given an application, and chose not to submit it. The Plaintiffs argue that since Noetzel "elected" not to file his application when he was informed of Farmington's additional conditions, there was no refusal to issue him a permit. Because there was no refusal, the Plaintiffs contend that Noetzel is not aggrieved within the meaning of § 4-183 et seq, and that the Board had no authority to entertain his administrative appeal.
This reasoning overlooks the issue of whether or not Plaintiffs constructively refused to issue Noetzel a pistol CT Page 1331-C permit. If Plaintiffs had no statutory authority to mandate the user fee and character reference requirements, their insistence on compliance with those conditions before allowing Noetzel to submit his application would be tantamount to a refusal.
Specific state statutes set forth the conditions which must be satisfied by applicants for a local permit to carry a pistol or revolver:
 "Requests for permits under section 29-28 shall be submitted to the issuing authority on application forms prescribed by the Commissioner of Public Safety." General Statutes § 29-28a.
 "The fee for each permit originally issued under the provisions of subsection (b) of section 29-28 for carrying pistols and revolvers shall be thirty-five dollars." General Statutes § 29-30.
As noted above, no provision of any of the applicable statutes authorized the Town of Farmington to charge a fee higher than $35, or to require that letters of character reference accompany the pistol permit application before its acceptance and processing.
Connecticut's municipalities have no inherent legislative authority, and can wield only those powers expressly granted to them by the legislature. Poprosky v. Shea, 21 Conn. App. 351, 355
(1990); Simons v. Canty, 195 Conn. 524, 530 (1985); Capalbo v.Planning and Zoning Board of Appeals, 208 Conn. 480, 490 (1988). "It is a well settled law that as a creation of the state, a municipality has no inherent powers of its own . . . and that a municipality possesses only such rights and powers that have been granted expressly to it by the state or that are necessary to discharge its duties and carry out its objectives and purposes."Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 19 (1987).
In the instant case, the Plaintiffs act pursuant to state statute as the issuing authority for local pistol permits. As the legislative history cited in the Defendant's brief suggests, it is clear that the General Assembly intended that there be uniformity among the state's cities and towns with respect to the applications for, and issuance of, these permits. In promulgating standardized procedures for the granting of local gun permits, the Legislature clearly attempted to strike a balance between the constitutionally protected right to keep and bear arms, and the vital public safety concern that only responsible citizens be CT Page 1331-D allowed to carry lethal weapons.
The Court finds that the Plaintiffs exceeded their statutory authority by insisting that Noetzel pay the additional fee and submit three character reference letters before his application would be accepted and processed by the Farmington Police Department Since these local prerequisites are not authorized by state statute, the Plaintiffs' actions in summarily refusing even to consider an applicant who had apparently complied with all the statutory conditions amounted to a constructive refusal to issue Noetzel a permit. The plaintiffs' argument that Noetzel never physically submitted his paperwork is unpersuasive. The applicant presented himself at Farmington Police Headquarters, fully prepared to submit his application. He was by all accounts in compliance with all the requirements of state laws governing the application process. Plaintiffs' insistence that Noetzel comply with unauthorized local conditions before he could apply prevented him from turning in the application. Accordingly, Noetzel was aggrieved by the Plaintiffs' refusal, and the Board had jurisdiction to hear his administrative appeal.
In so ruling, the court does not discount Plaintiffs' argument that character references are valuable investigative tools. General Statutes § 29-28 (b) provides that the local issuing authority may only grant a permit to "a suitable person." General Statutes § 29-29 requires that the issuing authority conduct an investigation to determine the applicant's suitability. Nothing in either law spells out the procedures or methodology which must be employed in conducting that investigation. If the Plaintiffs wished to speak with Noetzel, ask him for references and confer with persons who knew him as part of their inquiry, they were free to do so. However, they are not permitted by the statute to prevent him from applying until he furnished three letters of character reference.
Similarly, it is clear that the recent change in FBI policy which now requires local police to pay for fingerprint checks was not envisioned when the current gun laws were enacted. Plaintiffs' contention that applicants, and not financially-strapped municipalities, should pay this cost is understandable. Nonetheless, action by the General Assembly — and not unilateral action by a town or city — is required to change the gun permit fee structure and application process. To hold otherwise would create the real risk of diverse procedures being followed by the local authorities, and undermine the goal of CT Page 1331-E uniformity so clearly envisioned by the legislature.
Plaintiffs have also appealed Defendant's denial of their motion to reconsider. The record of this case reveals that Plaintiffs were provided adequate notice of the administrative hearing and the basis of Noetzel's complaint. The Plaintiffs, adopting the position that Noetzel never applied for a permit, claimed that the Board had no jurisdiction over the matter and declined to appear at the hearing or respond to the Board's statutorily authorized request for information. The record also reveals that Defendant Board afforded the Plaintiffs their full due process rights, including ample opportunity to plead their cause in the administrative hearing. Although Plaintiffs did not take advantage of this opportunity, and were chagrinned by the Board's decision, they are not entitled to a second hearing on the merits as a matter of statute or right. Accordingly, the court finds that the Defendant did not abuse its discretion or violate the law in denying the reconsideration motion.
The Plaintiffs' other challenge to the Board's decision is based upon the claim that no investigation of Noetzel's suitability for a pistol permit, as required by General Statutes § 29-29, was ever conducted. That statute requires a local authority to determine if an applicant "is a suitable person to receive such (a) permit." It also mandates that the local authority perform an investigation to determine the applicants suitability. The Plaintiffs argue that because they never investigated Noetzel to determine if he was an appropriate person to carry a pistol or revolver, the Board's order that Farmington issue the permit "forthwith" is violative of § 29-29.
The record is clear that the Board acted pursuant to the provisions of General Statutes § 29-32b in ordering Plaintiffs to issue Noetzel a permit. That statute addresses cases such as this when an issuing authority fails to furnish the Board with a written statement in response to a complaint, or where it fails to furnish an applicant with a gun permit application. The statute empowers the Board to circumvent uncooperative local issuing authorities by granting "the relief sought forthwith and without hearing" However, this statute cannot be read independently of other sections of the gun permit laws.
"General Statutes §§ 29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public CT Page 1331-F from individuals whose conduct has shown them to be lacking the essential character or temperament to be entrusted with a weapon." Dwyer v. Farrell, 193 Conn. 7, 12-13 (1984). Although Connecticut's firearms licensing laws do not specifically define the terms "suitable" and "unsuitable" the decision in Smith'sAppeal from County Commissioners, 65 Conn. 135 (1894) affords an appropriate definition:
 "A person is `suitable' who by reason of his character — his reputation in the community, his previous conduct as a licensee — is shown to be suited or adapted to the orderly conduct of a business which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense."
Given the vital public safety concerns which motivate Connecticut's guns laws, it is absolutely imperative that no person be permitted to carry pistols or revolvers until his or her suitability to do so has been adequately determined. To that end, the provisions of § 29-32b which empower the Board to grant the relief requested must be read in concert with § 29-29, which mandates an investigation of the applicant before any gun permit is issued.
In the instant case, no independent determination of Noetzel's suitability to carry firearms was ever undertaken. The lack of an investigation can be blamed on Plaintiff's failure to process Noetzel's application in accordance with state law. But the Board could have rectified that situation.
In Chiarenzelli v. Board of Firearms Permit Examiners,1994 Ct. Sup. 6862-J, No. 13 26 41, Judicial District of Stamford/Norwalk at Stamford, (July 11, 1994), Judge John Maloney ruled that the Board had the inherent authority to rule on an applicant's suitability, when the local authority erroneously failed to do so:
 "The plaintiff contends that the only appropriate forum for a finding of suitability is the office of the local police department. That argument, however, overlooks the provisions of § 29-32b (b). That statute, in effect, requires the board to make the necessary findings and conclusions when, as here, the chief of police has neglected or refused to do so."
In this case, the Board based its decision on Plaintiffs' CT Page 1331-G "failure to provide the information requested by the Board as directed by § 29-32b (c)." It did not entertain evidence about Noetzel's suitability, or make findings related thereto, at the administrative hearing. Pursuant to the holding inChiranzelli, it could and should have done so.
By ordering the issuance of a pistol permit without conducting an investigation or making a determination about Noetzel's suitability as required by § 29-29, the Board acted illegally and in abuse of its discretion. Even where a local authority has failed to comply with the licensing statutes, a gun permit should only be issued after a finding that the applicant is a fit person to carry firearms. A contrary holding would potentially endanger public safety by authorizing permits for persons who are unqualified, or unfit, to have them.
Where an administrative agency has failed to make necessary factual findings, the court cannot perform that function on administrative appeal. The appropriate remedy is to remand the case so that the agency may make the requisite findings based on evidence in the record. Guadino v. Board of Firearms PermitExaminers, et al 1991 Ct. Sup. 10474, 7 CSCR 100, 387791, Superior Court, Judicial District of Hartford/New Britain at Hartford (December 5, 1991).
Accordingly, the court orders that this case be remanded to the Defendant Board, with direction that it conduct further proceedings limited solely to deciding the issue of applicant Noetzel's suitability for a permit.
SO ORDERED.
DYER, J.